(No. 36039.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD D. BRYARLY, Plaintiff in Error.

*Opinion filed November 30, 1961.*

WILLIAM F. WOODS LAW OFFICES, by ARTHUR M. LERNER, of Champaign, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROBERT W. McDONALD, State's Attorney, of Urbana, (FRED G. LEACH, Assistant Attorney General, and ROBERT J. WAALER and ANDREW STECYK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Harold D. Bryarly, brings this writ of error to review his conviction for the crime of assault with intent to kill. The circumstances surrounding his prosecution are unusual. He was brought to trial in February of 1960 for an offense allegedly committed in June of 1952. While several grounds for reversal have been urged, we find it necessary to consider only the contention that he was deprived of his constitutional right to a speedy trial. Const. art. II, sec. 9.

At approximately 3:00 A.M. on June 29, 1952, a police officer in Champaign, Illinois, observed several men inside a building occupied by the Moose Club. One of the men had a pistol, and the officer called for assistance. Other officers arrived, and two of them entered the building but retreated when met by gunfire. The building was surrounded, and Harold E. Fields, Mark P. Spinner, Luther C. Williams and the defendant, Bryarly, were apprehended.

On September 16, 1952, an indictment containing three counts was returned against these four men. The first count charged burglary, and each of the others charged assault with intent to kill a named police officer. Three days later the men were admitted to bail. Their attorney made an oral motion to quash the indictment and was directed to file a written motion by October 4. Two extensions of time were obtained and the motion was filed on November 11. It was argued on March 31, 1953, and the court ordered additional briefs submitted. The motion to quash was denied on May 9, 1953, and the four men were then arraigned and the cause was set for trial on June 8. On June 4, this setting was vacated and on September 15 separate motions for severance were made. Argument on these motions was heard on October 3 and the matter taken under advisement until February 27, 1954, at which time the motions for severance were denied and the cause set for trial on March 30.

On March 8, 1954, motions were made for a rule on the State's Attorney to elect the counts of the indictment upon

which he was going to proceed, and to vacate the setting The setting was again vacated and, on January 21, 1955, the cause was reset for trial on April 11, 1955. On April 9, the attorney for the four men advised the court that Bryarly and Williams were confined in the county jail at Troy, Ohio, and the cause was reset for trial, as to Bryarly, on May 16, 1955.

Spinner was tried on April 11, 1955, and found not guilty of the burglary charge. He was not tried on the assault charges at that time. On May 12, a certified copy of an Ohio judgment, which showed that Bryarly and Williams had been sentenced to the penitentiary in Ohio for a term of one to fifteen years, was presented to the trial judge. The judge then released the surety on the bonds with the provision that he deposit with the county treasurer the sum of $250 to cover the cost of returning them to Champaign County upon their discharge from the penitentiary in Ohio. He also ordered "that a hold order issue forthwith" as to them. Fields pleaded guilty to the burglary charge on June 6, 1956. The assault charges were *nolle prossed* as to him, and he was placed on probation.

An alias warrant was issued for Bryarly's arrest on October 2, 1959. The cause was later set for trial as to Williams and Spinner and then reset for trial on February 15, 1960, as to Williams, Spinner and Bryarly. Bryarly was extradited from Indiana on January 12, 1960, and thereafter he filed motions for discharge, severance and election. The motions for discharge and severance were denied, and the State's Attorney elected to proceed on the second assault charge. The three men were found guilty after a trial before a jury. Bryarly and Williams were sentenced to the penitentiary for a term of not less than 10 nor more than 14 years; Spinner was granted probation. Only Bryarly's case is now before us.

In addition to the foregoing matters of record, the defendant's verified motion for discharge stated that at the

time of the acquittal of Mark P. Spinner on the burglary charge the then acting State's Attorney made no effort to have the assault causes called for trial, but instead he stated that he saw no reason to attempt to proceed further on those charges because the jury had believed the testimony of Mark P. Spinner, and there would therefore be no chance for a conviction in the remaining causes. The motion alleged that this statement by the State's Attorney was made openly and publicly, and that the defendant knew of it.

The defendant contends that the delay of nearly eight years from his indictment to this trial, coupled with the announced intention of the prosecution to abandon the case, deprived him of his constitutional right to a speedy trial. To meet this contention the People assert that the delay was occasioned by the defendant and that he did not demand a trial. They also dispute the defendant's contention that there was an intention to abandon the prosecution.

The constitutional guaranty of a speedy trial is implemented directly by two statutory provisions, and indirectly by a third, all of which are relevant to an appraisal of these contentions. In its present form, the oldest of these statutes provides that any person who is committed for an offense, is not admitted to bail, and is not tried within four months of his commitment, shall be set at liberty "unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at a later day in which case the court may continue the cause for not more than sixty (60) days." It also provides that a person who has been admitted to bail shall be entitled, on demand, to be tried within four months after such demand. Ill. Rev. Stat. 1959, chap. 38, par. 748.

In construing this provision, it was held that the four-month period did not run while an accused was im-

prisoned for another offense. (*Gillespie* v. *People*, 176 Ill. 238; *People* v. *Lukoszus*, 242 Ill. 101; *People* v. *Franzone*, 359 Ill. 391.) There are similar statutes in most of the States, and almost all of the courts that have passed upon the question have reached a contrary conclusion. See *People* v. *Ross*, 13 Ill.2d 11, 13; 118 A.L.R. 1037.

In 1957 the General Assembly enacted the second statute, which provides that whenever any person is imprisoned in a penitentiary of this State, any untried indictment or information pending in the county in which he was sentenced is barred for want of prosecution if the prisoner is not brought for trial within four months after the date of incarceration, "unless the delay occurs upon the application of the prisoner; * * *." (Ill. Rev. Stat. 1959, chap. 38, par. 633.1.) Concerning this statute we said: "We think that this statute was clearly intended to afford prisoners the right to a speedy trial and to overcome our previous decisions in *People* v. *Franzone*, 359 Ill. 391; *People* v. *Kidd*, 357 Ill. 133; *People* v. *Lukoszus*, 242 Ill. 101, and *Gillespie* v. *People*, 176 Ill. 238, which held that time spent in prison on one charge will not be counted in computing the period of delay in bringing the defendant to trial on a different charge. (See *People* v. *Ross*, 13 Ill.2d 11.)" *People* v. *Swartz*, 21 Ill.2d 277, 281-282.

The third statute is the "Uniform Criminal Extradition Act," (Ill. Rev. Stat. 1959, chap. 60, pars. 18-49,) which became effective in July of 1955. Section 5 of this act provides: "When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this State may agree with the Executive Authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to

such other state at the expense of this State as soon as the prosecution in this State is terminated." Ill. Rev. Stat. 1959, chap. 60, par. 22.

Despite the extraordinary delay in disposing of the preliminary motions in this case, we agree with the People that the delays that occurred before April of 1955, when it became known that the defendant was incarcerated in Ohio, were attributable to the defendant. The situation is different, however, with respect to the ensuing period. It is clear that if the defendant had been incarcerated in Champaign County during this period, the indictment would have been barred for want of prosecution long before 1960, unless the delay had occurred "upon the application of the prisoner." Ill. Rev. Stat. 1959, chap. 38, par. 633.1.

There was no such application. Instead there was an announcement after Spinner's acquittal that the prosecution would be abandoned. The People contend that the record does not show that after Spinner's acquittal the State's Attorney stated he would no longer prosecute this case. But the allegation was made in the defendant's verified motion for discharge. It was not disputed in the trial court, and the People can not now deny its truth. The facts that the court ordered that the defendant's bondsman deposit money to pay for the cost of returning the defendant to Illinois upon his release from Ohio and directed that a "hold order" should issue, do not establish that the People intended to pursue the case against the defendant. These orders were entered prior to Spinner's acquittal, which is the critical date so far as the announced abandonment of the prosecution is concerned. Moreover, there is nothing to show that a hold order ever issued or was communicated to the Ohio authorities. The defendant's subsequent arrest in Indiana suggests the contrary.

While the defendant was not imprisoned within Champaign County, he was not beyond the reach of the prosecution. Under the Uniform Criminal Extradition Act he could

have been brought back to Illinois and tried. The People direct our attention to the fact that this act did not become effective until after the defendant was incarcerated in Ohio, but they do not suggest, and we see no reason to hold, that the statute was for that reason unavailable.

The constitutional guaranty of a speedy trial contemplates that the means that are available to meet its requirements shall be utilized. Under the circumstances of this case we think that the burden of taking the steps necessary to bring about a prompt trial rested upon the People. When the legislature intended that a defendant should take affirmative action to prevent the delay of his trial, it expressly so provided. Ill. Rev. Stat. 1959, chap. 38, par. 748; see *State v. Prosser,* 309 N.Y. 353, 130 N.E.2d 891 (1955); see also cases collected, 57 A.L.R. 2d 302, 326-341.

Although the defendant wrongfully left the jurisdiction of the court, the prosecution knew where he was and could have initiated proceedings to return him to Illinois for trial. There is nothing to indicate that the Ohio authorities would not have acted favorably. That State has also adopted the Uniform Criminal Extradition Act (Ohio Rev. Code, §§ 2963.01-2963.29 (1953)) and has a section similar to our section 27 which provides that "Nothing in this Act contained shall be deemed to constitute a waiver by this State of its right, power or privilege to * * * regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this State, * * *." Ill. Rev. Stat. 1959, chap. 60; par. 44; Ohio Rev. Code, § 2963.25 (1953).

We hold that under the facts of this case the defendant was deprived of his constitutional right to a speedy trial. The judgment of the circuit court of Champaign County is reversed.

*Judgment reversed.*