THE PEOPLE *ex rel.* C. DAVID VOGEL, Livingston County State's Attorney, Petitioner *v.* JAMES FAIRMAN, Pontiac Correctional Center, Respondent-Appellee.—(John Szostek, Relator-Appellant.)

Fourth District   No. 4—82—0385

Opinion filed February 8, 1983.—Rehearing denied March 9, 1983.

Edward Mogul, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield, and C. David Vogel, State's Attorney, of Pontiac (Michael B. Weinstein and Michael V. Accettura, Assistant Attorneys General, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:

The Interstate Agreement on Detainers.

Defendant is serving time for armed robbery in an Illinois penitentiary. Arizona wants him sent there to stand trial for another armed robbery.

Question: Did the Arizona judge "approve" the request for tem-

porary custody?

The Illinois trial court found that he had.

We also find that he did.

We affirm.

Szostek is presently a prisoner at the Pontiac Correctional Center where he is serving a six-year sentence for armed robbery. The State of Arizona, pursuant to the Agreement on Detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9) (the Agreement), forwarded a request for the temporary custody of Szostek in order to prosecute him for a second armed robbery. The request was signed by the deputy county attorney of Maricopa County, Arizona, and certified by an Arizona judge. Governor James R. Thompson of Illinois approved the request.

Szostek filed a petition for a writ of *habeas corpus* in Livingston County. He alleged in his petition that the Arizona judge had failed to duly approve the request for temporary custody. The trial court issued the writ and two hearings were held before the Honorable William T. Caisley. Judge Caisley found that the Arizona judge had duly approved the request and then ordered the writ of *habeas corpus* discharged. Szostek was remanded to the custody of Warden Fairman. Judge Caisley further ordered the warden to honor the State of Arizona's request for temporary custody of Szostek.

Szostek argues that the Arizona judge failed to comply with the requirements of the Agreement because he failed to duly "approve" the request for temporary custody. Article IV(a) of the Agreement requires the judge in the State requesting the prisoner to "have duly approved, recorded and transmitted the request." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9, art. IV(a).) The Arizona judge's signature on the custody request in the present case follows a clause which states in full:

> "I hereby certify that the person whose signature appears above [the deputy county attorney of Maricopa County] is an appropriate officer within the meaning of Article IV(a) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request I hereby transmit it for action in accordance with its terms and the provisions of the Agreement on Detainers."

Szostek bases his position—that the judge's signature following the above clause does not constitute *approval* of the request—on two separate arguments. *First*, he argues that the absence of the word "approved" in the clause above demonstrates a lack of approval by the judge and, *second*, he argues that the clause fails to reflect an independent investigation of the request by the judge.

## I

His first argument is without merit. In the interpretation of statutes, common sense is often the court's truest guide. Many times, common sense prevails where linguistic gymnastics fail. Such is the situation concerning Szostek's first argument.

■■ We have no reason to believe that the Arizona judge was not fully aware that the Agreement required him to approve the request. Common sense then tells us that if the judge had not *approved* of the request, he would not have *signed* it. The absence of the express term "approved" is immaterial. The judge's signature following the above-quoted clause on the request fully constitutes the requisite approval.

## II

Szostek's second argument concerns the action a judge must take in approving a request. Szostek argues that by using the word "approved," the legislature intended for the judge to carry out an independent investigation into the background of each detainer request. He argues that the judge may "approve" the request only after he is satisfied that the prosecutor is not filing the detainer request without grounds or in bad faith. Because the request in the case at bar contained no evidence that the judge based his decision on such an investigation, Szostek argues that it has not been duly approved.

In reply, the State argues that the word "approved" simply requires a judge to determine that the statutory requirements of the Agreement have been met. Those requirements are: (1) the requested person is in custody in another jurisdiction; (2) there is a charge presently pending in the requesting jurisdiction; and (3) the prosecutor and the requesting jurisdiction have decided to proceed with the prosecution. See generally Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9, art. III(a).

Unlike the first argument, common sense does not provide an easy answer to Szostek's second argument. The term "approved" is a general term—undefined within the Agreement itself. Standing alone, the term does not tell us what actions must comprise the judge's "approval"—whether he must conduct an independent investigation or whether he must simply insure that the statutory requirements are met. Therefore, this court is left with the task of determining what constitutes approval as the term is used in article IV(a) of the Agreement. There are four interpretive tools which may be employed to aid this court in defining the specific meaning of a general statutory term: *plain* meaning, *dictionary* meaning, prior *judicial* definitions, and *legislative* policy.

One prefatory note before we use those four tools. Although the Agreement is an Illinois statute, passed by the Illinois legislature, signed into law by our governor, and codified in our statute books, the United States Supreme Court has recently held that it is a Federal law. In *Cuyler v. Adams* (1981), 449 U.S. 433, 66 L. Ed. 2d 641, 101 S. Ct. 703, the court held that an agreement such as ours is an interstate compact approved by Congress under the compact clause of the United States Constitution. The court stated that where Congress authorizes the States to enter into cooperative agreements dealing with matters which are the proper subject of Federal legislation, the consent of the Congress transforms the agreements of the States into Federal law.

Therefore, we will use the four interpretive tools as they are defined by Federal law.

#### (a) PLAIN MEANING

In construing a statutory term that has not been previously judicially interpreted, the court is guided by the plain meaning of the language. (*Janowski v. Teamsters Local No. 710 Pension Fund* (7th Cir. 1982), 673 F.2d 931.) The words in the statute should be given their ordinary meaning. *NLRB v. Coca-Cola Bottling Co.* (1956), 350 U.S. 264, 100 L. Ed. 285, 76 S. Ct. 383; *United States v. Marathon Pipe Line Co.* (7th Cir. 1978), 589 F.2d 1305.

Szostek's interpretation of the word "approved" strains its plain meaning. If the legislature had intended the judge to launch an independent investigation into the background of each detainer request, it would have used more than the word "approved" in setting out that requirement. It appears more reasonable to this court to view the plain meaning of "approved" as a legislative direction that the judge insure that all of the statutory requirements for a transfer request have been met.

#### (b) DICTIONARY MEANING

In the absence of statutory definition of an ordinary term, the presumption is that the word is being used in the ordinary dictionary sense. (*United States v. Fordyce* (S.D. Cal. 1961), 192 F. Supp. 93.) Webster's Third New International Dictionary defines "approve" in part as: "1. to demonstrate the truth or correctness of: *** 4. to judge and find commendable or acceptable: *** 5a. to express often formally agreement with and support of or commendation of as meeting a standard." Webster's Third New International Dictionary 106 (1976).

Black's Law Dictionary defines "approve" as: "To be satisfied with; to confirm, ratify, sanction, or consent to some act or thing done by another. To sanction officially; to ratify; to confirm; to pronounce good ***." Black's Law Dictionary 94 (5th ed. 1979).

None of the above definitions have perimeters wide enough to include Szostek's interpretation of "approved." None of the definitions explicitly or implicitly require independent fact finding on the part of the person making the approval. Instead, all of the definitions have a common theme—that to approve means to certify someone else's actions as satisfactory. That is exactly what takes place under the State's interpretation. The approving judge certifies the prosecutor's request as meeting all of the statutory requirements.

### (c) PRIOR JUDICIAL DEFINITIONS

Often prior judicial definitions of the same term in different contexts prove helpful in defining a general term. The court in *Stewart v. Yellowtail* (D. Mont. 1940), 35 F. Supp. 798, 799, stated that "[t]o 'approve' is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another." The court in *Tibbens v. Clayton* (E.D. Okla. 1923), 288 F. 393, 396, stated that to approve means to "sanction officially" and that the term embraced "both direction and confirmation." Under the above cases, to "approve" means simply to ratify or sanction the act of the prosecutor. It does not mean that the judge must conduct an investigation into whether the prosecutor is using the agreement in bad faith or whether there are sufficient grounds for the custody request.

### (d) LEGISLATIVE POLICY

Finally, courts must heed the general policy pronouncement of a statute. (*Villanueva v. Motor Town, Inc.* (7th Cir. 1980), 619 F.2d 632.) This is especially true when a statute, such as the Agreement, is fashioned after a model statute. (*Pritchard v. Liggett & Myers Tobacco Co.* (3d Cir. 1965), 350 F.2d 479.) It is the court's duty to favor an interpretation which effectuates the policy behind the enactment of a statute, particularly where such an interpretation is consistent with the plain language of the statute. *United States v. General Motors Corp.* (D.C. Cir. 1975), 518 F.2d 420.

Article I of the Agreement states in pertinent part, "[I]t is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition" of detainers. (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9, art. I.) Article IX of the

Agreement requires that the Agreement "shall be liberally construed so as to effectuate its purposes." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9, art. IX.) Furthermore, the expedient and orderly processing of detainers and the increased cooperation between the party States have been judicially recognized as purposes of the Agreement. (See *United States v. Mauro* (1978), 436 U.S. 340, 56 L. Ed. 2d 329, 98 S. Ct. 1834; *Mars v. United States* (6th Cir. 1980), 615 F.2d 704 (recognizing that every effort should be made to accomplish the disposition of detainers as promptly as possible).) The State's interpretation of "approved" furthers these legislative policies. Simply insuring that the statutory requirements are met without carrying out a background investigation results in the expeditious and orderly disposition of requests and *ergo* increased cooperation between the party States.

### FINIS

■ In conclusion, it is apparent to this court that the approving judge is not required by the language of article IV(a) of the Agreement to investigate the background of every custody request. Instead, it is sufficient that he first insure that the statutory requirements have been met and then acknowledge that fact by simply signing the request form. Furthermore, that form need not contain the specific phrase "duly approved" as long as it is clear from the face of the form that the judge has approved its contents by affixing his signature.

Therefore, we find that the Arizona judge duly "approved" the request for the temporary custody of Szostek.

Affirmed.

TRAPP and MILLER, JJ., concur.