THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE HOWELL, Defendant-Appellant.

Fourth District No. 4—82—0676

Opinion filed November 1, 1983.

Daniel D. Yuhas and Jerome McGuire, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig DeArmond, Special Prosecutor, of Danville, for the People.

JUSTICE MILLS delivered the opinion of the court:

Howell escaped from the Vermilion County Jail.

Twelve years later he was tried for escape.

Did the delay deny him any procedural rights?

No.

We affirm.

In an attempt to concisely set forth the tangled jumble of dates and details from the record below, here is a chronological table listing the relevant developments surrounding Howell's past 14 years' experience with the criminal justice system:

Chronology of events

| | |
|---|---|
| 2-12-69 | Defendant sentenced to 4 to 6 years in a Federal correctional institution for interstate transportation of a stolen motor vehicle. |
| 5-70 | Defendant escaped from Federal correctional institution in Florida. |
| 6-14-70 | Defendant arrested in Vermilion County and charged with rape. |
| 8-3-70 | Defendant pleaded guilty to rape and was sentenced to 9 to 10 years' imprisonment to run concurrently with the Federal sentence. Defendant then escaped from the Vermilion County jail. |
| 9-16-70 | Defendant arrested in Texas for robbery. Defendant indicted by Vermilion County grand jury for escape. |
| 11-16-70 | Defendant sentenced on the robbery charge to 20 years' imprisonment with the Texas Department of Corrections. |
| 1971 | According to defendant, he wrote a letter to the Vermilion County State's Attorney's office requesting that he be brought to trial on the escape charge. |
| 6-19-73 | Defendant's file in the Vermilion County State's Attorney's office was reviewed, his Texas conviction noted, and the file marked "close file until notified." |
| 5-30-80 | Defendant paroled in Texas and released to Federal custody to complete his initial Federal sentence. |
| 9-15-80 | Defendant wrote a letter to the Vermilion County State's Attorney's office. |

| | |
|---|---|
| 9-24-80 | Defendant wrote a letter to the Vermilion County circuit court. |
| 12-5-80 | Defendant was paroled on his initial Federal sentence and began serving an 18-month sentence for his escape from the Florida institution. |
| 12-24-80 | A special prosecutor was appointed to prosecute defendant for his Illinois escape. |
| 1-5-81 | The Vermilion County authorities were notified of defendant's impending release. |
| 2-4-81 | Vermilion County sent to Federal officials a certified copy of defendant's indictment for the Illinois escape. |
| 12-31-81 | Defendant was released from Federal prison into the custody of the sheriff's office of Shelby County, Tennessee. |
| 3-24-82 | Defendant extradited to Illinois to stand trial for escape. |
| 8-31-82 | Defendant convicted of escape after bench trial. |

Defendant appeared in Vermilion County circuit court on March 25, 1982, when counsel was appointed and he was given a trial date of April 7, 1982. Prior to trial on the escape charge, defendant's appointed counsel filed a writ of *habeas corpus* and moved to dismiss the charge on the basis of prosecutorial misconduct and denial of a speedy trial. Both motions and the writ were denied.

Defendant waived a jury trial and proceeded to bench trial on August 31, 1982. He was convicted of escape (Ill. Rev. Stat. 1981, ch. 38, par. 31—6) and—by his own election—was sentenced under the prior statute to a term of imprisonment of not less than two and not more than six years, to run concurrently with his sentence on the Illinois rape conviction.

Howell appeals, maintaining that: (1) his constitutional and statutory rights to a speedy trial were denied; (2) he was denied due process because of prosecutorial misconduct; and (3) his sentence of imprisonment was improperly imposed.

We affirm—on all grounds.

### I. SPEEDY TRIAL

At the hearing on defendant's motion to dismiss the escape charge, he testified that while serving in the Texas penitentiary in 1971:

"I wrote a letter—just a plain letter to the District Attorney's

office asking them if they had anything against me on the escape charge or any other charge, would they bring me to Court as soon as possible to do away with the charges."

Defendant received no response to this letter. According to further testimony at the hearing, there is no record in the Vermilion County State's Attorney's file that any such letter was ever received. On June 19, 1973, defendant's file was reviewed, his Texas conviction and the "hold" sent to Texas authorities were noted, and the file marked "close file until notified."

Defendant wrote another letter dated September 15, 1980, and received on September 17, 1980, by the Vermilion County State's Attorney. The letter stated in part:

"While in Texas I wrote to your office asking for a fast and speedy trial on your state's escape charge which your office decided not to prosecute."

The letter also made inquiry as to what amount of time remained for defendant to serve on his sentence for rape.

Defendant wrote another letter dated September 24, 1980, to the Vermilion County circuit court. This letter made no reference to the letter alleged to have been written in 1971, but it did make inquiry regarding what amount of time remained for defendant to serve on his sentence for rape.

 Defendant first argues that the inaction of the Vermilion County State's Attorney denied his right to a speedy trial under the United States Constitution. In determining whether a delay in trial has breached constitutional limitations, a four-part test weighing the conduct of both the defendant and the prosecution is used. (*Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.) The four factors to be considered are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant.

 The length of the delay is a triggering mechanism to the operation of the test. (*Barker v. Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192.) The defendant was indicted on September 16, 1970, and Illinois did not seek his extradition until December of 1982. The delay of over 11 years is inordinate and sufficient to trigger an inquiry into the other facts that go into that test.

The State explains the delay as the result of a procedure whereby the prosecution awaits the completion of sentence in a foreign jurisdiction prior to having a defendant transferred to face trial on unrelated charges. Relying on *People v. McInery* (1980), 91 Ill. App. 3d 68, 413 N.E.2d 876, the State claims that Illinois courts have given tacit approval to such delays. The reliance is misplaced. In *McInery*, there

was a 33-month delay between the issuance of an extradition warrant and the appearance of the defendant in court pursuant to a fugitive information. The court commented on the delay as follows:

"The reason for this delay is unexplained. *While we disapprove of such a delay*, there is no evidence that the State intentionally delayed the proceeding so as to deprive defendant of his rights. Instead it appears the State felt it would be more orderly to wait until the sentence defendant was serving on his Illinois conviction was completed. [Citation.]" (Emphasis added.) 91 Ill. App. 3d 68, 70, 413 N.E.2d 876, 877.

Contrary to the State's assertion, *McInery* explicitly disapproved of the delay which the State's procedure caused.

Furthermore, in *People v. Bryarly* (1961), 23 Ill. 2d 313, 178 N.E.2d 326, the Illinois Supreme Court indicated that the State is not free to delay trial until the conclusion of a defendant's foreign incarceration. There, defendant was indicted in September 1952, and his out-of-State incarceration became known to the Illinois authorities in April of 1955. An alias warrant was issued in October of 1959, and he was extradited in January of 1960. In reversing the conviction and dismissing the charges, the supreme court said that "the burden of taking the steps necessary to bring about a prompt trial rested upon the People." (23 Ill.2d 313, 319, 178 N.E.2d 326, 329.) Therefore, we conclude that the State here had a duty to take steps to bring the defendant to a prompt trial. See also *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 35, 363 N.E.2d 875, 878.

However, neither *McInery* nor *Bryarly* necessarily require reversal here. In subsequent speedy trial cases, the supreme court indicated that the reversal in *Bryarly* was grounded in large part upon facts, other than merely the delay, indicating that the prosecution of the defendant had been abandoned. (See *People v. Moriarity* (1966), 33 Ill. 2d 606, 610, 213 N.E.2d 516, 518; *People v. Tetter* (1969), 42 Ill. 2d 569, 575, 250 N.E.2d 433, 436.) There is no evidence here of an abandonment of the prosecution. Also, as in *McInery*, there is no evidence that the State intentionally delayed the proceedings as to prejudice the defendant or deprive him of his rights. We thus proceed to the remaining factors involved in the *Barker* test.

The third factor to be considered is the defendant's assertion of his right to a speedy trial. The supreme court in *Barker* emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." (407 U.S. 514, 532, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182, 2193.) In its order denying defendant's motion for dismissal, the trial court took note of the defendant's testimony regarding the letter purportedly written in 1971 and the

fact that neither the letter nor a copy was offered in evidence. The court explicitly found that "the evidence fails to sustain that defendant asserted his right to a speedy trial."

In most cases where a speedy trial violation has been found, there was a continuous assertion of a right to a speedy trial on the part of the defendant through various letters and motions. (*Barker; Smith v. Hooey* (1969), 393 U.S. 374, 21 L. Ed. 2d 607, 89 S. Ct. 575; *Dickey v. Florida* (1970), 398 U.S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564.) By our defendant's own testimony, other than the letter written in 1971, he made no inquiry regarding the status of the escape charge until September of 1980. Even then, defendant's interest was not that he be given a speedy trial, but rather to what extent the time he was then beginning to serve in Federal custody would offset his sentence on the Illinois rape charge.

■ The 1980 letter to the State's Attorney made reference to defendant's purported request for a speedy trial in 1971. It made no request or demand for trial. Instead, it made a self-serving assertion that the State's Attorney had decided not to prosecute the escape charge. Defendant's 1980 letter to the circuit court did not even make reference to the 1971 letter, nor did it make or refer to any demand for trial. The defendant admitted in his own testimony that in neither of the letters written in 1980 was he demanding a speedy trial. The trial court's conclusion that the defendant did not assert his constitutional right to a speedy trial was not against the manifest weight of the evidence. Accordingly, this factor must be weighed heavily against the defendant. *Barker; Harflinger*.

Finally, defendant makes no claim that any actual prejudice in presenting his defense occurred because of the delay. Indeed, the record indicates that there is no question that the defendant forcibly absented himself from the Vermilion County jail, and there is no perceptible way in which the delay in trial hindered his defense. Defendant does assert that while in Federal custody he would have been eligible for work release and halfway house programs had it not been for the Illinois detainer. Also, he claims he has lost any chance to have his escape sentence run concurrently with any earlier prison terms.

We have found nothing in the record which indicates that defendant was denied entry into a work release or similar program because of a pending charge for escape. Furthermore, it is not clear that such could properly be considered as prejudice caused by a delay in trial. See *Moody v. Daggett* (1976), 429 U.S. 78, 86-87, 50 L. Ed. 2d 236, 243-44, 97 S. Ct. 274, 278-79; *Watkins v. United States* (6th Cir. 1977), 564 F.2d 201, 206-07.

■ As to defendant's other claim of prejudice, a defendant al-

ready imprisoned can be injured by trial delay that prevents him from receiving a sentence at least partially concurrent with the one he was receiving. See *Smith v. Hooey* (1969), 393 U.S. 374, 378, 21 L. Ed. 2d 607, 611, 89 S. Ct. 575, 577.

Defendant's two- to six-year sentence for escape runs concurrent to his sentence for rape. Since the rape sentence was for 9 to 10 years, to run concurrent with the Federal sentence, and the defendant subsequently served less than two years in Federal prison, the delay in his trial and sentencing on the escape charge did not result in any prejudice to him.

We are left with weighing the four factors, no one of which is either a necessary or sufficient condition for finding a deprivation of the right to speedy trial. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." (*Barker v. Wingo* (1972), 407 U.S. 514, 533, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182, 2193.) The trial delay of over 11 years after indictment is extraordinary. The delay was caused not by any bad faith on the part of the State, but merely its desire to postpone defendant's trial until he would be returned to Illinois to serve his rape sentence in the normal course of serving his various outstanding prison terms. The evidence shows defendant made no assertion of his right to a speedy trial. The facts of the case are straightforward, and there is overwhelming evidence of defendant's guilt. Defendant admits he suffered no prejudice in the defense of his case and we find no other prejudice caused to the defendant by the delay.

Defendant argues that the length of delay here is of such magnitude that (1) it tips the balance of the four factors in his favor, and (2) prejudice should be presumed. We have found no authority for basing a speedy trial violation on delay alone. Neither is there authority for an irrebuttable presumption of prejudice solely because of the length of the delay in bringing a defendant to trial. Since *People v. Love* (1968), 39 Ill. 2d 436, 442, 235 N.E.2d 819, 823, several Illinois cases have suggested that pretrial delay may be so prolonged that it may be deemed to have prejudiced the accused. (See also *People v. Gulley* (1980), 83 Ill. App. 3d 1066, 404 N.E.2d 1077; *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815.) However, both in *Love* and the succeeding cases, the court either found actual prejudice or the delay was sufficient for prejudice to be presumed. The court in *Love*, in recognizing that a delay can be so prolonged that it must be presumed to have prejudiced an accused, cited two Federal appellate court cases, both of which make clear that the presumption merely shifts the burden to the prosecution to prove that the defendant has suffered no prejudice. (*United States v. Banks* (4th Cir. 1966), 370

F.2d 141, 145; *Jackson v. United States* (D.C. Cir. 1965), 351 F.2d 821, 822.) That burden has been met here.

We conclude on these facts, that extraordinary delay, produced by a good faith but improper procedure of the State, does not by itself constitute a speedy trial violation where the defendant did not assert his right to a speedy trial and clearly suffered no prejudice.

Defendant next claims that his right to a speedy trial under the agreement on detainers (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9) was denied. Under article III of the agreement a prisoner invokes its procedural time limits when, *inter alia*:

"[H]e shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint."

A demand for a speedy trial under the agreement is to be evaluated against a more stringent standard than a request that a charge be dismissed based on an alleged violation of defendant's constitutional right to a speedy trial. (See *People v. Jones* (1981), 84 Ill. 2d 162, 417 N.E.2d 1301.) A demand for a speedy trial must be clear and unequivocal (*People v. Athide* (1979), 71 Ill. App. 3d 963, 966, 389 N.E.2d 240, 242). A demand for a speedy trial is distinct from request for a dismissal based on its alleged denial. (See *Sacco v. Falke* (8th Cir. 1981), 649 F.2d 634, 636; *Brown v. Estelle* (5th Cir. 1976), 530 F.2d 1280, 1283.) Further, the sending of informal requests for disposition of a defendant's charges does not initiate the Act's provisions. *Beebe v. Vaughn* (D. Del. 1977), 430 F. Supp. 1220; *Gray v. Benson* (D. Kan. 1978), 443 F. Supp. 1284; *Williams v. Maryland* (D. Md. 1978), 445 F. Supp. 1216.

We have already discussed how defendant's two letters written in 1980 failed to make a request for a speedy trial even under the less stringent requirements of the sixth amendment. Defendant admits that the explicit requirements of the agreement were not met, but maintains a liberal construction should be given to the two letters because there is nothing in the record to indicate that the defendant was notified, as required by the agreement, of his right and duties under the agreement. Defendant cites no authority for this proposition. The law in Illinois is to the contrary. Despite the fact that a warden fails to advise a defendant of his rights under the agreement, a court has no authority to dismiss an indictment unless the explicit terms of the agreement are fulfilled by a defendant. *People v. Uplinger* (1976), 45 Ill. App. 3d 558, 359 N.E.2d 1052.

Even if it would be appropriate in extraordinary circumstances,

the facts here would not justify such an extension. In defendant's 1980 letter to the State's Attorney, his reference to his 1971 letter clearly shows that he understood the distinction between demanding a speedy trial and claiming one had not occurred. Furthermore, on cross-examination at the hearing on the motion to dismiss, the defendant gave the following testimony regarding the 1980 letters:

"Q. You don't contend that you are specifically demanding speedy trial in People's Exhibit 12, do you?

A. I can't say that I did in writing, no, sir.

Q. Okay, thank you. Now, in Number 15, your letter of the 24th, please review that, and tell us if, in there, you are demanding speedy trial?

A. No, sir.

Q. Okay, Mr. Howell, you've reviewed Number 15 and your answer is?

A. No.

Q. You did not demand a speedy trial in that exhibit either?

A. No, sir."

It is only in the letter of 1971 that defendant claimed that he demanded a speedy trial. No argument has been made that the 1971 letter served to trigger the agreement on detainers.

Finally, we note that we are aware that since the agreement is an interstate compact, it is Federal law and is to be interpreted as such. (*Cuyler v. Adams* (1981), 449 U.S. 433, 66 L. Ed. 2d 641, 101 S. Ct. 703; *People ex rel. Vogel v. Fairman* (1983), 112 Ill. App. 3d 477, 445 N.E.2d 860.) We know of no Federal law contrary to the conclusions we have reached. In fact, in Federal *habeas corpus* proceedings, great significance has been attached to the distinction between a demand for a speedy trial and a claim that a speedy trial has been denied. (See *Sacco; Brown.*) Therefore, we conclude that the trial court's order denying defendant's motion to dismiss because of an asserted denial of a speedy trial, was correct.

### II. PROSECUTORIAL MISCONDUCT

Due to the current State's Attorney having been the defendant's appointed counsel in the rape case, a motion for appointment of special prosecutor was filed on December 24, 1980, and John McClory, a private attorney was appointed.

The defendant, through his counsel in Memphis, Tennessee, negotiated an agreement with the special prosecutor whereby, if the defendant succeeded in his petition for executive clemency for the 1970 rape conviction, the prosecutor would dismiss the pending escape charge. The agreement was evidenced in part by a letter written

to Governor Thompson in care of the Illinois Prison Review Board by McClory in which he wrote, *inter alia*:

"For these reasons I recommend that Mr. Howell's remaining sentence on the rape case (70 Y 131) be remitted by executive clemency. If this occurs, I will dismiss the Illinois escape case. I have discussed this with our chief judge and he indicated that he concurs in my recommendation."

After McClory inexplicably disappeared in December of 1980, Craig DeArmond, another local attorney, was substituted as special prosecutor. After reading the files and contacting defendant's attorney, DeArmond came to the conclusion that the negotiated "agreement" at no time included a requirement that the special prosecutor either cooperate with or recommend executive clemency, but merely that if such clemency was granted there was an obligation to dismiss the escape charge. DeArmond notified defendant's counsel of his position.

DeArmond also discovered that McClory's letter contained a false representation regarding the presiding judge's purported concurrence with McClory's personal recommendation for clemency made outside the perimeters of the agreement. DeArmond immediately notified both the judge involved and the Governor through the Prisoner Review Board of this misrepresentation, and the judge then wrote a letter confirming the same. In his letter, DeArmond also strongly opposed the granting of executive clemency to the defendant. In a letter to defendant's attorney, DeArmond wrote:

"I neither agree with nor will I assist in obtaining Executive Clemency for Mr. Howell. I have spoken with Judge Robinson, who indicated he at no time agreed with or supported Executive Clemency. He further advised he agreed only that Mr. McClory, as prosecutor, could make whatever decision he chose with regard to prosecution of the Escape should Mr. Howell receive Clemency. As a judicial officer, Judge Robinson indicated he was not and would not be a party to the decision making process, but merely that he was in agreement with Mr. McClory's prosecutorial discretion. If pressed for an opinion, he indicated he would not support a request for Executive Clemency."

Defendant's request for executive clemency was denied.

■ There is no question that a successor prosecutor is bound by the agreements of his predecessors. (*Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 385 N.E.2d 829.) Defendant concedes that the prosecutor did not violate the letter of the "agreement," but maintains that the prosecutor was implicitly bound not to subvert the

promise by opposing executive clemency. Thus, DeArmond's conduct was improper.

The difficulty with defendant's position is that there was no plea agreement involved here. In fact, the defendant agreed to nothing. The prosecutor made a gratuitous promise requiring nothing of the defendant. The defendant was free at all times to seek or not seek clemency from the Governor. Upon succeeding to the prosecutor's post, DeArmond informed defendant's attorney that he would abide by the letter of the "agreement," but would attempt to block the occurrence of the condition which would trigger it. There was no guile in the actions of the prosecutor.

With *Cooper v. United States* (4th Cir. 1979), 594 F.2d 12, as his authority, defendant implicitly argues that he need show no prejudice in order to have a court enforce this "agreement" with the special prosecutor. We remain unconvinced that defendant has a constitutional right to prevent the undermining of a gratuitous promise by a prosecutor. In *Cooper*, the terms of a plea agreement were withdrawn by the prosecutor shortly after the defendant agreed to accept the agreement, but before defendant's counsel could communicate his acceptance to the prosecutor. The court stated:

> "We hold instead that under appropriate circumstances—which we find here—a constitutional right to enforcement of plea proposals may arise before any technical 'contract' has been formed, and on the basis alone of expectations reasonably formed in reliance upon the honor of the government in making and abiding by its proposals." (594 F.2d 12, 18.)

The third circuit (*Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360), and the Illinois Appellate Court (*People v. Robinson* (1980), 82 Ill. App. 3d 937, 403 N.E.2d 604) have rejected *Cooper's* conclusion that an expectation alone is sufficient to establish a defendant's interests in a plea agreement. We believe *Virgin Islands* and *Robinson* represent the better view.

■■ Defendant also asserts that he detrimentally relied on the prosecutor's promise. However, he does not explain what the alleged detriment was, and we find nothing in the record to indicate that defendant was in any way prejudiced. Therefore, the trial court's denial of defendant's motion to dismiss because of prosecutorial misconduct was correct.

### III. THE SENTENCE

The trial court, in passing sentence, made the following comments:

> "The State has presented the position that you are one of those

people, Mr. Howell, who has no redeeming virtue and that for the protection of society, you should be warehoused indefinitely, and there are some people who fall in that category. \*\*\* The arguments of Mr. Ney are also a bit persuasive. \*\*\* Mr. Ney has represented that you have served a large portion of your life behind bars, that you would reach a point of diminishing your terms, that further incarceration would only serve to make you more bitter and less useful at whatever date you might be released, that you have paid in full for whatever offenses you may have committed, and that now is the time that you should be released. *If the Court was gifted with a crystal ball, I would know which position is right. Unfortunately, I am not.* I think that certainly you have spent an awfully large portion of your life, you've spent a lot of years behind bars. I think it goes without saying that *any rehabilitative factors that may be at work* that may be beneficial, *you have had the time and opportunity to receive those.* And probably as far as you are concerned individually, Mr. Howell, you have reached or maybe already passed the point at which it would be better to release you into society *with the hope that you have benefitted from your experiences,* learned the error of your ways, and would be able to make it successfully on the outside. However, the Court cannot consider you alone. When a man is isolated from his fellowman whose acts are not isolated, whatever anyone does has an effect on the rest of the People. \*\*\* The Court has to consider the effect this sentence might have on someone else that may be down in the Public Safety Building facing a sentence and considering the possibility of effecting his own release. The manner in which you perpetrated the escape, endangering the safety of the correctional officers, one of them a young officer who was just starting his career. \*\*\* I feel that there has to be some penalty imposed for this escape due to the effect it would have on others considering such a manner of getting out of jail. *I think if no sentence were imposed upon it, it would deprecate the seriousness of the offense itself.*" (Emphasis added.)

Defendant, by selectively quoting from the above comments, suggests that the trial court concluded that the defendant was rehabilitated, that further incarceration would be of no benefit to him or protect the public, and that he was improperly imprisoned solely to deter others. *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261.

Taken as a whole, the trial judge's comments clearly indicate that he was unsure as to whether defendant had been rehabilitated. Furthermore, he specifically found that if no sentence was imposed "it

would deprecate the seriousness of the offense." The record thus amply demonstrates substantial compliance with the requirements of section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—1). See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

Defendant also argues that his sentence of imprisonment is contrary to the purposes of the Unified Code of Corrections. Section 1—1—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1001—1—2) sets out its purposes as follows:

"Purposes. The purposes of this Code of Corrections are to:

(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders;

(b) forbid and prevent the commission of offenses;

(c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and

(d) restore offenders to useful citizenship."

Defendant argues that, because he has demonstrated that he is rehabilitated, further incarceration serves no purpose. Even if we assume that defendant is completely rehabilitated, contrary to the reluctance of the trial court to reach such a conclusion, we still cannot conclude that a sentence of imprisonment here subverts the purposes of the Code of Corrections. Among the purposes listed in the Code is to prescribe sanctions proportionate to the seriousness of offenses and to forbid and prevent the commission of the offenses.

Imposing a sentence so as to not deprecate the seriousness of an offense serves to both prescribe sanctions proportionate to the seriousness of the offense and prevent the commission of offenses. The trial court noted that in the commission of the escape a correctional officer was taken hostage and his life was endangered. We cannot say that the trial court's conclusion, that no sentence of imprisonment would deprecate the seriousness of the offense, was erroneous. The sentence was within the purposes of the Unified Code of Corrections.

The judgment and sentence of the trial court are affirmed.

Affirmed.

WEBBER, P.J., and TRAPP, J., concur.