(No. 49293.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VIRGIL UPLINGER, Appellant.

*Opinion filed November 30, 1977.*

Richard J. Wilson, Deputy Defender, and Karen Munoz, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

William J. Scott, Attorney General, of Springfield, and Robert J. Bier, State's Attorney, of Quincy (Donald B. Mackay and Victor M. Pilolla, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the Uniform Agreement on Detainers Act (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9), hereinafter referred to as the Uniform Agreement. The circuit court of Adams County dismissed an indictment against the defendant because, *inter alia,* he had not been advised of his right to be tried within 180 days as prescribed by the Uniform Agreement. The appellate court reversed. (45 Ill. App. 3d 558.) We granted the defendant's petition for leave to appeal.

On March 8, 1974, the defendant, Virgil Uplinger, was indicted for the offense of burglary in Adams County. He was arraigned on March 26, 1974, and bond was set at $1,000. In violation of the conditions of the bond, the defendant left the State to visit his girl friend in Missouri. While in Missouri, he was arrested for a violation of a prior Missouri parole and was incarcerated in the Missouri State Penitentiary.

On May 7, 1974, defendant's counsel moved for a continuance on the grounds that the defendant was incarcerated in Missouri. On May 13, defendant's counsel filed a petition for writ of *habeas corpus ad prosequendum,* which was issued on that date and sent to the warden of the prison in Missouri, directing him to produce the defendant for trial in Illinois. On May 14, the defendant's counsel was informed by the warden that the writ would not be honored; the warden advised counsel to proceed under the Uniform Agreement.

On May 17, 1974, an arrest warrant was issued by

Adams County and lodged as a detainer against the defendant at the Missouri penitentiary. The prison officials informed the defendant that the warrant had been lodged against him shortly after it was received. On May 30, the defendant wrote to his attorney in Illinois stating that he had been informed of the detainer and requesting that his attorney do whatever was necessary to dispose of the Illinois proceedings. Apparently the defendant's counsel, in reply, advised him to find out from the warden what could be done to expedite his return to Illinois. According to the defendant's testimony, his requests to the warden went unanswered. There were no further proceedings under the Uniform Agreement.

On October 8, 1974, the defendant was released from the penitentiary, his sentence having been satisfied. However, he was immediately arrested by Randolph County (Missouri) sheriff's officers pursuant to the aforementioned warrant. He was thereafter transferred to the Randolph County jail in Huntsville, Missouri, where he remained throughout the duration of the proceedings on the warrant.

The defendant's counsel, appointed by the Missouri court, filed a motion to dismiss the warrant proceedings. On November 22, 1974, a hearing was held on the motion, at which time the court held that if Illinois took no action to extradite the defendant by December 2, 1974, the motion would be granted and the defendant discharged. No extradition proceedings were initiated at that time, and the court, accordingly, released the defendant from custody on December 2, 1974.

Regarding the extradition of the defendant to Illinois, it is significant to point out that on October 4, 1974, while still in prison, the defendant refused to waive extradition. Consequently, the State began proceedings to extradite the defendant on October 11, but was advised by the extradition officer of the State of Illinois to proceed under

the Uniform Agreement. However, on correspondence with the prison, the State received information that defendant had been released. No further extradition proceedings were commenced.

On December 3, 1974, a hearing was held in Adams County on a motion to dismiss the charges against the defendant. At a hearing on January 20, 1975, the defendant voluntarily appeared and testified. On February 14, 1975, the trial court held that the defendant had not been advised by the warden of his right to request a final disposition of his case, as prescribed by the Uniform Agreement, that the defendant's constitutional right to a speedy trial had been violated, and also that the State had not been diligent in prosecuting the defendant. Accordingly, the trial court dismissed the charges against the defendant and released him from custody.

As noted above, the appellate court reversed the circuit court's order. In this court, the defendant has appealed from that portion of the appellate court's holding dealing with the Uniform Agreement. The precise question we are asked to decide is whether the defendant may be discharged because he was effectively denied his right to be brought to trial within the time period prescribed in the Uniform Agreement (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9).

The Uniform Agreement has been adopted by 44 States, including Illinois, as a means of providing for the expeditious disposition of criminal charges pending in one State while an accused is imprisoned in another State (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. I). The present case primarily concerns the provisions of article III (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III), which provides for the manner whereby the operational procedures of the Uniform Agreement are invoked upon initiation of the prisoner.

Article III(a) of the Uniform Agreement reads, in

pertinent part, as follows:

> "Whenever a person has entered upon a term of imprisonment in \*\*\* a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment \*\*\* on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court \*\*\* written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment \*\*\*.*" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(a).)

Section (b) of article III directs the warden to forward the notice and request for final disposition, along with a certificate containing relevant information about the prisoner, to the "appropriate prosecuting official and court." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(b).) Section (c) of article III provides that "[t]he warden \*\*\* shall promptly inform [the prisoner] of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment \*\*\* on which the detainer is based." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(c).) Section (e) of article III states that "[a]ny request for final disposition \*\*\* shall also be deemed to be a waiver of extradition." Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(e).

According to the clear wording of section III(a), the right of a prisoner to be tried within 180 days accrues only after the operational procedures set forth in the statute are effectuated. It is incumbent upon the prisoner to initiate these procedures by forwarding a proper request for final disposition to the warden, so that the additional procedural requirements set forth in the statute may be met.

In the present case, the defendant failed to comply with the statutory provisions of the Uniform Agreement.

In particular, he did not forward to the warden a request for final disposition, as required by section (b). All he did was to write two letters to the warden, apparently requesting information as to how he might proceed to dispose of the Illinois matter. Such requests, however, do not conform to the specific statutory requirements, which must be met before the 180-day period begins to run.

Despite his failure to comply with the statutory provisions of the Uniform Agreement, the defendant argues that he is nevertheless entitled to its protection. He argues that he was prevented from complying with its technical provisions because the warden did not "inform him of his right to make a request for final disposition" of his case, as mandated by section (c) (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(c)). Given the warden's failure in this regard, the defendant argues that his petition for writ of *habeas corpus ad prosequendum,* which informed the State of his whereabouts and indicated to the proper authorities his intent to dispose of the Illinois charges, constituted substantial compliance with the requirements of the Uniform Agreement. Consequently, he contends that the 180-day period began to run with the filing of the petition for the writ, on May 13, 1974.

There is no doubt that the Missouri warden failed to totally comply with the mandate of the statute, in that there is no evidence that the warden ever informed the defendant of his right to request a final disposition, as required by section (c). However, in light of the particular circumstances attendant in this case, we do not agree with the defendant's contention that the warden's nonfeasance excused the defendant from complying with the procedural requirements of the Uniform Agreement.

The warden did inform the defendant that a detainer had been lodged against him, as required by section (c) of article III of the Uniform Agreement. The defendant, in turn, corresponded with his attorney, seeking advice as to

what could be done to expedite the disposition of the Illinois proceedings. There is evidence, based on the defendant's own testimony as elicited at the Illinois hearing, that as a result of this correspondence the defendant was made aware of his right to demand to be brought back to Illinois. Consequently it cannot be said that the warden's failure to advise him of this right prejudiced the defendant to any significant degree.

Under the circumstances presented, the writ of *habeas corpus ad prosequendum* did not invoke the provisions of the Uniform Agreement. We are aware of *United States v. Mauro* (2d Cir. 1976), 544 F.2d 588, which held that the writ constituted a detainer entitling the inmate in that case to the protection provided for in the Uniform Agreement. In that case, however, the prosecutor had instituted the action under the Uniform Agreement (causing the writ to issue, 544 F.2d 588, 591), and the warden of the prison in the sending jurisdiction complied with the writ and delivered the prisoner over for trial to the receiving State. In the case before us today, the Missouri warden notified the defendant's counsel, who had caused the writ to issue, that it would *not* be honored and expressly advised counsel to proceed under the Uniform Agreement. Thus, *Mauro* was a proceeding instituted by the prosecutor to secure the return of the defendant under article IV of the Uniform Agreement, whereas in the present case, the proceeding was under article III of the Uniform Agreement, which permits the defendant to institute the proceedings after a detainer has been lodged against him. (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(a).) At the time defendant's counsel procured the writ and sent it to the warden the prosecutor had taken no action to initiate proceedings under the Uniform Agreement, nor had he lodged a detainer against the defendant. It was not until after defendant's counsel had been informed by the warden that the writ had not been honored that the

prosecutor procured an arrest warrant in Adams County and lodged it as a detainer against the defendant at the Missouri penitentiary. It then became incumbent upon the defendant to initiate proceedings under article III of the Uniform Agreement. The mere procurement of the writ by defendant's counsel and forwarding it to the warden in Missouri did not comply with the requirements of article III, and in conjunction with the evidence that defendant's counsel advised him of his right to request to be brought into Illinois, we feel it was incumbent upon the prisoner to initiate the procedures set forth in the statute. As we have discussed, his argument that his noncompliance was the result of the Missouri warden's failure to advise him of his right to request a final disposition is unpersuasive since both he and his attorney were aware of this right.

However, even assuming that the filing of the writ of *habeas corpus ad prosequendum* invoked the provisions of the Uniform Agreement, we would not be persuaded that the charges against the defendant should be dismissed. This is true because of the defendant's refusal to waive extradition on October 4, 1974. At that time there were still 33 days remaining in the 180-day statutory period. Had he not blocked his return to the State by refusing to waive extradition, it is likely that the charges against him would have been disposed of within the time period mandated by the Uniform Agreement.

In our view, it would be incongruous to provide the defendant with the protection of the speedy trial provision of the Uniform Agreement when, as evidenced by his refusal to waive extradition, he manifested the clear intent to prevent his return for trial in Illinois. The defendant's choice not to waive extradition, we feel, effectively negates the contention that he was anxious to return to Illinois for trial. Consequently, it would be improper to release him because he was not brought to trial within the

180 days prescribed by the statute. Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*