THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE RAY PRINCE, Defendant-Appellant.

Third District   No. 3—92—0187

Opinion filed April 1, 1993.

McCUSKEY, P.J., dissenting.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, George Ray Prince, was convicted of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a)). He was subsequently sentenced to 40 years' imprisonment. The defendant appeals.

The record shows that on August 16, 1979, the defendant was charged by information with rape. Before he could be arrested in Illinois, he was charged with aggravated sexual abuse in Texas. On July 29, 1983, the defendant was convicted in Texas and was sentenced to 50 years in the Texas Department of Corrections. The State of Illinois filed a detainer against the defendant on August 25, 1983. On April 16, 1991, the defendant filed a written speedy trial demand in Illinois. On May 21, 1991, the State of Illinois filed a motion to temporarily transfer the defendant from the Texas Department of Corrections to the Peoria County jail for purposes of trying him on the rape charge.

On June 25, 1991, an indictment was filed which was substantially similar to the information filed on August 16, 1979. On September 6, 1991, the defendant filed a motion to dismiss the indictment because the three-year statute of limitations expired in August of 1982, and because the defendant's speedy-trial rights had been violated. The motion also noted that physical evidence which was collected shortly after the charged offense had occurred was destroyed on January 11, 1983.

On September 9, 1991, the defendant filed a second motion to dismiss based on his July 29, 1983, Texas plea agreement. According to the transcript of the agreement, which was appended as an exhibit to the motion, one element of the negotiated plea in Texas was that the State of Illinois would not prosecute the pending rape charge.

The defendant's motions to dismiss were heard on October 31, 1991. The defendant testified that his appointed counsel in Texas told him that he would not be prosecuted on the rape charge in Illinois or on a pending charge in Oregon if he pled guilty to the Texas charge and received a sentence of 50 years' imprisonment. Some months after pleading guilty and being sentenced, he learned that charges were

still pending in Illinois. However, he did not do anything about it because he thought that it had been taken care of by the Texas plea agreement. When he checked again in 1991, he found that the Illinois charge was still pending, so he had a fellow inmate draft a speedy-trial demand.

Following the testimony of the defendant, the parties stipulated that neither John Barra, the State's Attorney of Peoria County in 1983, nor Robert Gaubas, the first assistant State's Attorney of Peoria County in 1983, nor Donald Toohill, the chief of the warrant division of the Peoria County State's Attorney's office in 1983, had any independent recollection concerning any Texas plea agreement involving the rape charge in Illinois. The parties further stipulated that Patricia Maxwell, the property clerk for the Peoria police department in 1983, had been ordered to destroy physical evidence in the case because the case had been pending for over three years. Maxwell therefore destroyed the rape kit, the victim's clothes, hair and Coke bottles found at the scene, and fingerprints lifted from the bottles.

Also presented to the court at the hearing were the following exhibits: (1) the transcript of the 1983 Texas plea hearing which included testimony by the defendant and statements by the prosecutor and defense attorney that neither Illinois nor Oregon would be prosecuting the defendant on pending charges; (2) the defendant's 1991 written speedy-trial demand; (3) a teletype from the Peoria County sheriff's department on August 3, 1983, stating that George Prince was incarcerated in the Texas Department of Corrections to serve a 50-year sentence for aggravated sexual abuse and that a detainer should be placed on him; and (4) a memorandum written by Peoria County Assistant State's Attorney Jim Miller in August of 1983 indicating that Prince was sentenced to 50 years' imprisonment in Texas and that the Illinois warrant was placed as a detainer. Following arguments by both sides, the court took the matter under advisement.

On November 14, 1991, the trial court issued a written order denying the defendant's motions to dismiss. The order concluded that: (1) the filing of the information on August 16, 1979, tolled the running of the statute of limitations; (2) the Texas plea agreement did not bind the Peoria County State's Attorney absent further evidence to the contrary; (3) the defendant's speedy-trial rights were not violated because he did not promptly assert his rights under the Interstate Detainer Act; (4) the defendant did not establish that he was prejudiced by the destruction of evidence; and (5) the defendant did not establish bad faith by the authorities in destroying the evidence.

The defendant proceeded to trial before a jury on December 5 and 6, 1991. Following the presentation of evidence and closing arguments, the jury was unable to reach a unanimous verdict. Consequently, the court declared a mistrial.

On January 29, 1992, the defendant waived his right to a jury trial, and the cause proceeded to a bench trial. As a preliminary matter, the defendant's motions to dismiss were renewed and denied. The parties then stipulated that Moline police officer Gillis Reed would testify that at 8:49 a.m. on August 15, 1979, a 1969 white or gold four-door Cadillac with Illinois license plate SW8011 was found abandoned behind the Greyhound Bus Station on 14th Street. He would further testify that the car was towed to the police station and kept there until August 18, but that it was not analyzed for fingerprints.

Lisa Spears testified that she was 16 years old in August of 1979. She lived on Bourland Street in Peoria with her father and sister. During the summer of 1979, George Prince, a friend of her father, came to live with the family. He was supposed to watch over the house and the children while her father travelled on business. Lisa identified the defendant as George Prince.

In August of 1979, Lisa, her sister, her father, her father's girlfriend, and the defendant went to the horse races in Moline. They drove in two cars, the defendant driving her father's Cadillac, a 1969 model with Illinois license plate SW8011. After spending the day and night in Moline, the witness was anxious to get home because she had a job at Steak & Shake and was expecting a letter from her boyfriend. Since her father planned to remain in Rockford for a while, he arranged for the defendant to drive her home in his Cadillac. Lisa's father told her that there was $500 in the car which she should use to pay the bills once she got home.

According to Lisa, she and the defendant left Rockford at about 7 or 7:30 p.m. On the way back to Peoria, the defendant stopped to buy beer. He drank some of the beer in the car while driving and told Lisa that she was good-looking. They arrived home between 11:30 p.m. and 1 a.m., and the defendant continued drinking. Sometime after she went to bed, she was awakened when the defendant jumped on her, choked her, and threatened to kill her unless she had sex with him. He subsequently performed oral sex on her in the living room and had sexual intercourse with her on the floor of the kitchen. Throughout the incident, she told him she would not tell anyone if he would take the car and the money and leave. He eventually drove away in her father's Cadillac. Lisa testified that she did not consent to have sex

with the defendant and that there was no relationship between them beyond her living at the house and his being a houseguest.

After the defendant left, Lisa went to the home of her landlord, Betty Anderson, and pounded on the back door. Anderson let her in, and Lisa was subsequently taken to St. Francis Hospital, where she was examined and evidence was collected.

Debra Schmidt testified that she was a registered nurse working in the emergency room at St. Francis Hospital in 1979. On August 13, 1979, a young woman came in, saying that she had been raped. According to the emergency room report, the patient complained of being choked and raped by a man who had been living with her family. Red marks were apparent on the patient's neck and left shoulder, but there was no other evidence of trauma. Evidence was collected from the patient and given to Officer Ganda.

Peoria police officer Craig Ganda testified that he photographed Lisa Spears at St. Francis Hospital and collected her clothing and the rape kit. Lisa told him that she had been raped on the kitchen floor and her hair had been pulled out, and that hair and Coke bottles which her assailant had touched should be in the kitchen. Officer Ganda then went to the house on Bourland Street. There, he found clumps of hair on the kitchen floor which appeared to be similar in length and color to the victim's. He also found several Coke bottles. The hairs, bottles, clothes, and rape kit were all prepared for transmittal to the Morton Crime Lab. Ganda subsequently lifted fingerprints from one of the Coke bottles. On January 20, 1992, he took prints from the defendant at the Peoria County jail. Those prints matched the prints found on the bottle.

Following closing arguments by both sides, the trial court found the defendant guilty of rape and continued the cause for sentencing.

A sentencing hearing was held on February 28, 1992. At the commencement of the hearing, defense counsel argued a previously filed motion for new trial which claimed, *inter alia,* that the court should have granted the pretrial motions to dismiss on speedy-trial grounds. The motion was denied.

The defendant took the stand and testified that when he entered prison, he was illiterate. However, he can now read and write at about a sixth-grade level.

At the conclusion of the hearing, the court sentenced the defendant to an extended term of 40 years' imprisonment to be served consecutively to his Texas sentence. The court also certified the defendant as a habitual child sexual offender.

On appeal, the defendant first argues that his sixth amendment right to a speedy trial was violated because there was nearly a 12-year delay between the time he was originally charged with the offense and the time his trial was held.

We begin by noting that in *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, four factors were set forth to determine whether a defendant has been denied the right to a speedy trial. Those factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.

The threshold question in a *Barker* analysis is whether the delay is presumptively prejudicial. If a delay is presumptively prejudicial, then the court should go on to balance the remaining three factors. *People v. Belcher* (1989), 186 Ill. App. 3d 202, 542 N.E.2d 419.

The United States Supreme Court has recently provided some guidance on the issue of presumptive prejudice stemming from the length of the delay. In *Doggett v. United States* (1992), 505 U.S. ____, 120 L. Ed. 2d 520, 112 S. Ct. 2686, the Supreme Court recognized that pretrial delay is often both inevitable and justifiable. Specifically, the Court noted that great weight should be accorded to the government's need to collect witnesses, oppose pretrial motions, and track down defendants. Nevertheless, in *Doggett*, the Court reversed the defendant's conviction, noting that the 8½-year delay between the defendant's indictment and his trial was extraordinary. The Court went on to state that official negligence in bringing an accused to trial is not tolerable simply because the defendant is unable to show how the delay prejudiced him. Further, the toleration of such negligence varies inversely with its protractedness.

■ The instant case involves a delay of over 12 years between the time charges were initially filed against the defendant and his eventual trial. While some of that delay may be attributable to the government's need to track down the defendant, it is clear from the filing of the detainer in Texas that the State was aware of the defendant's location at least as far back as 1983. Since the defendant was not tried until 1991, the delay attributable to the State in the instant case was at least an extraordinary eight years. This delay is approximately the same length as was involved in *Doggett* and is presumptively prejudicial.

Having concluded that the delay involved is presumptively prejudicial, we turn our attention to the second *Barker* factor, the reason for the delay. The responsibility for providing a justifiable reason for the delay rests with the State. (*People v. Belcher* (1989), 186 Ill. App. 3d

202, 542 N.E.2d 419.) A defendant need only show that the delay was not attributable to his actions. *People v. Belcher* (1989), 186 Ill. App. 3d 202, 542 N.E.2d 419.

■ The State contends that the delay was justified because it was awaiting the completion of the defendant's sentence in Texas. However, this argument has been consistently rejected as a justification for such delays. (See *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 363 N.E.2d 875; *People v. Belcher* (1989), 186 Ill. App. 3d 202, 542 N.E.2d 419; *People v. Howell* (1983), 119 Ill. App. 3d 1, 456 N.E.2d 236; *People v. McInery* (1980), 91 Ill. App. 3d 68, 413 N.E.2d 876.) Thus, while no evidence has been presented to show that the eight-year delay was the result of an intentional effort by the State to gain a tactical advantage, the State is unable to offer any explanation which would justify the inordinate delay and lessen the presumption of prejudice.

Turning to the third *Barker* factor, the defendant's assertion of his right, we note that the State emphasizes that it filed a detainer shortly after the defendant's Texas conviction. The State seems to suggest that this excused it from pursuing the expeditious prosecution of the defendant until he actually filed a speedy trial demand. We disagree.

The detainer statute expressly provides:

"Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the *expeditious* and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 1003—8—9.)

Therefore, we cannot say that the filing of a detainer excuses the inordinate delay involved here.

We recognize that under ordinary circumstances, the failure to request a speedy trial is weighed heavily against the defendant. (*People v. Howell* (1983), 119 Ill. App. 3d 1, 456 N.E.2d 236.) However, where the defendant is justifiably under the impression that charges are no longer pending against him, his failure to demand trial will not constitute waiver of his right to a speedy trial. See *People v. Bryarly* (1961), 23 Ill. 2d 313, 178 N.E.2d 326.

■ Here, the illiterate defendant was notified in writing that a detainer had been placed against him. However, when he pled guilty to the Texas charges he was orally informed that the State of Illinois would not prosecute him. It was not until years later, after the defendant had learned to read, that he discovered that the Illinois

charge was still pending. In light of these unique circumstances, we find that the defendant's failure to assert his right in a more timely manner did not constitute a waiver of that right and should not be held against the defendant.

■ We now turn our attention to the final *Barker* factor, the prejudice suffered by the defendant. In so doing, we note:

> "[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' *** Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify." (*Doggett v. United States* (1992), 505 U.S. ___, ___, 120 L. Ed. 2d 520, 530-31, 112 S. Ct. 2686, 2692-93.)

Accordingly, the protracted delay involved here made it unnecessary for the defendant to show actual prejudice. (*Doggett v. United States* (1992), 505 U.S. ___, 120 L. Ed. 2d 520, 112 S. Ct. 2686; see also *People v. Belcher* (1989), 186 Ill. App. 3d 202, 542 N.E.2d 419.) We further note that it is undisputed that virtually all the physical evidence gathered in the instant case had been destroyed several years prior to the defendant's trial. While the defendant is unable to show that the destruction of the evidence prejudiced him, the State is likewise unable to show that it did not.

Viewing the factors in their totality, we find that the defendant's right to a speedy trial was violated. While there was no evidence that the delay was intended to prejudice or oppress the defendant, the State has failed to overcome the presumption of prejudice by offering either a justification for the protracted delay or adequate evidence that the delay did not prejudice the defendant.

The judgment of the circuit court of Peoria County is reversed.

Reversed.

SLATER, J., concurs.

PRESIDING JUSTICE McCUSKEY, dissenting:

I respectfully dissent from the majority's opinion that the defendant's rape conviction must be reversed. I conclude from the record that the defendant did not establish a violation of his right to a speedy trial.

I agree with the majority that the first two factors set out in *Barker v. Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92

S. Ct. 2182, 2192, favor the defendant. I agree that the eight-year delay in this case must be considered extraordinary. Further, I agree that the State has not provided an adequate justification for the delay.

However, I strongly disagree with the majority opinion regarding the third factor, the defendant's assertion of his right to a speedy trial. There is no dispute that, on August 25, 1983, the State of Illinois filed a detainer against the defendant pursuant to the interstate agreement on detainers (the Agreement) (Ill. Rev. Stat. 1983, ch. 38, par. 1003—8—9). The majority concludes that the fact the defendant was notified of the detainer in writing should not be weighed against the defendant because he was illiterate. The facts of this case do *not* support this conclusion. The defendant acknowledged that the detainer was lodged against him in 1983. Further, the facts presented in the majority opinion show that, several months after the defendant was sentenced in Texas, "he learned that charges were still pending in Illinois." Obviously, despite his illiteracy, the defendant was aware of the Illinois detainer. Yet he did nothing.

Also, a "detainer" has been described by this court as:

 " ' "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." [Citations.] The detainer must be a formal notice initiated by a prosecuting or law enforcement agency within the member State where criminal charges are pending that the prisoner is wanted to face criminal charges and the notice must be filed with the institution in which the prisoner is serving a sentence.' " (*People v. Hood* (1991), 223 Ill. App. 3d 157, 160, 583 N.E.2d 1173, 1175, quoting *People v. Befeld* (1980), 90 Ill. App. 3d 772, 774, 413 N.E.2d 550, 552.)

The provisions of the Agreement apply when a detainer has been lodged against a prisoner who has entered a term of imprisonment in a party State. (*Hood*, 223 Ill. App. 3d at 159, 583 N.E.2d at 1175.) Article III(c) of the Agreement specifically provides:

 "The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." (Ill. Rev. Stat. 1983, ch. 38, par. 1003—8—9.)

Not once has the defendant ever contended that these requirements were not carried out. (*Cf. People v. Uplinger* (1977), 69 Ill. 2d 181,

188, 370 N.E.2d 1054, 1057.) Therefore, I conclude that the defendant was properly informed of the contents of the detainer lodged against him and was also informed of his right to make a request for a final disposition. Accordingly, the defendant's illiteracy cannot excuse his inaction from 1983 to 1991.

Additionally, the majority's reliance on the defendant's illiteracy excuse is erroneous because that contention has been waived. The defendant did not present any evidence concerning his illiteracy until his sentencing hearing. This was after his motions to dismiss had already been denied. Also, the defendant did not argue in his appellate brief that his illiteracy excused his inaction after the detainer was filed. The defendant argues for the first time in his reply brief that the delay was excusable because he was unable to read when he was notified of the detainer. It is well established that an argument not raised in the trial court is considered waived on appeal. (*People v. Adams* (1989), 131 Ill. 2d 387, 395, 546 N.E.2d 561, 564-65.) Also, a point not argued in an appellant's brief may not be raised in the reply brief. 134 Ill. 2d Rules 341(e)(7), (g); *People v. Thomas* (1987), 116 Ill. 2d 290, 304, 507 N.E.2d 843, 849.

The defendant *did* argue in the trial court and in his brief that his delay "should be excused in light of the circumstances surrounding his Texas plea agreement." This argument is not persuasive. The record clearly shows that the defendant could not have reasonably believed that the Illinois charge against him was dismissed pursuant to the plea agreement. The majority opinion admits that the defendant learned several months after being sentenced in Texas that the Illinois charge was still pending against him. Therefore, the defendant knew that the Illinois charge was pending and did nothing following his conviction in Texas.

Regarding the fourth *Barker* factor, the majority acknowledges that the defendant is *unable* to show that the delay caused the defendant actual prejudice. The majority relies on *Doggett v. United States* (1992), 505 U.S. ___, 120 L. Ed. 2d 520, 112 S. Ct. 2686, and *People v. Belcher* (1989), 186 Ill. App. 3d 202, 542 N.E.2d 419, in concluding that the protracted delay made it unnecessary for the defendant to show actual prejudice. However, I believe *Doggett* and *Belcher* are distinguishable. In both *Doggett* and *Belcher*, the defendant was *not* aware of the charges against him and therefore could not have asserted his right to a speedy trial. Here, in contrast to *Doggett* and *Belcher*, the defendant did not assert his right to a speedy trial for almost eight years after the detainer was lodged against him. Further,

the defendant in the instant appeal has not shown that he was prejudiced by the delay in prosecuting the charge against him.

I conclude that the trial court properly denied the defendant's motion to dismiss. Therefore, I would affirm the defendant's conviction and sentence.