THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN-NIE BEARD, Defendant-Appellant.

First District (1st Division)    No. 1—93—3323

Opinion filed January 9, 1995.—Rehearing denied April 11, 1995.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael P. Golden, and Christopher B. Kaczynski, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Johnnie Beard, was convicted of retail theft and sentenced to two years' probation. On appeal, defendant contends that: (1) he was denied his statutory and constitutional rights to a speedy trial; (2) the trial court's refusal to dismiss the jury venire consisting of only one African-American prospective juror violated his constitutional right to a jury drawn from a fair cross-section of the community; and (3) the trial court erred in refusing to allow defense counsel to cross-examine a police officer on matters allegedly omitted from his police report, for the purpose of impeaching the testimony of another witness. For the following reasons, we affirm the judgment of the trial court.

PRETRIAL MATTERS

The record reveals the following relevant facts. Defendant was indicted for retail theft on October 7, 1991. Subsequently, defendant was indicted for violation of bail bond and was arraigned for both indictments on November 6, 1991. At that time, defendant appeared in court and offered a medical excuse for his failure to appear in court on July 22, 1991. The trial court released defendant on bond and imposed a curfew upon him, and the case was continued by agreement.

On January 7, 1992, the parties appeared in court and the State indicated its election to proceed on the retail theft case. The case was set for a jury trial on February 13, 1992, by agreement. On February 13, 1992, the trial court granted a continuance until March 11, 1992, on defendant's motion. The case was subsequently continued to April 22, 1992, by agreement, because of the trial court's crowded docket. On that date, defendant filed a motion to substitute judges and obtained a court date of June 22, 1992.

On June 22, 1992, the parties appeared in court and defendant answered ready for trial. The State then changed its election to the violation of bail bond case, stating that it was the easier of the two

cases to try. The State acknowledged that it had been unsuccessful attempting to contact the victim of the retail theft. Defense counsel indicated that she was ready to proceed on the retail theft charge, but not on the violation of bail bond charge, and agreed to continue the case for this reason. The trial court set the case for status, rather than trial, on August 4, 1992, at defense counsel's request.

On August 4, 1992, the case was continued by agreement to August 14, 1992. On that date, the State changed its election to the retail theft case, and the defendant made an oral and written demand for trial. The case was continued to September 21, 1992, on the State's motion.

On September 21, 1992, defendant answered ready for trial. The State moved for a continuance, and the case was set for November 12, 1992.

On November 12, 1992, the State changed its election back to the violation of bail bond charge, explaining that, "we happened to pick a store that's going out of business." Defendant waived his right to a jury trial and the trial judge tried the violation of bail bond charge. At the conclusion of the evidence, the trial court, Judge Sheila O'Brien presiding, found defendant not guilty. On the State's motion, the retail theft charge was continued to December 15, 1992.

The trial court set the retail theft case for January 4, 1993, at which time the case was continued on the State's motion to February 8, 1993. On February 8, 1993, defendant filed a motion to dismiss the retail theft indictment, contending that his constitutional right to a speedy trial had been violated. Defendant argued that 232 days had passed since his first demand for a trial on June 22, 1992. On February 11, 1993, the trial court denied defendant's motion, finding that the State had 160 days from the disposition of defendant's violation of bail bond charge to try the retail theft charge, and that 160 days had not expired. The court continued the case to March 31, 1993, on the State's motion, at which time a jury trial commenced.

TRIAL

Prior to selection of the jury, defense counsel observed that the jury venire included only one African-American. Defense counsel called a side-bar and requested that the venire be dismissed. The trial court gave defense counsel the opportunity to present authority to support her motion, but defense counsel offered no additional support. The trial court denied the motion, and the jury selection commenced.

At trial, Jeff McPherson testified on behalf of the State that he was the store manager at Dion Furs, 8504 West Golf Road, Niles.

McPherson stated that the store had several sales desks equipped with silent alarm buttons which, when pushed, would contact the Niles police department. McPherson stated that two to three security sensor tags are attached to each fur coat in the store; two are visible and one is concealed underneath the lining of the coat. The sensor tags set off alarms contained in posts on either side of the front store entrance should a garment pass through that area. McPherson added that customers must be buzzed in and out of the front entrance.

On February 27, 1991, at approximately 5 p.m., defendant and Connie Walker entered the store. McPherson approached them and inquired whether they required assistance. He started to help them look for coats, and after approximately 15 minutes, defendant and Walker split up to look at different merchandise. McPherson accompanied defendant to the men's coat area and answered defendant's questions about sizes and prices of coats.

Subsequently, defendant and Walker began to leave the store without purchasing anything. They walked toward the front entrance together, as McPherson stood at the front desk. As defendant and Walker left, the alarms sounded. McPherson approached defendant and Walker. Defendant stood next to the door buzzer and pressed the button to let Walker out. Defendant followed Walker out of the door, and McPherson followed them. McPherson grabbed Walker in the vestibule of the store and pulled her back into the store. Defendant walked over to a car at the far end of the parking lot, and McPherson saw defendant throw something under the car. McPherson stated that he pressed the silent police alarm prior to following defendant and Walker out of the store.

Once back inside the store, Walker ran into a corner, pulled a coat out from under her skirt and pitched it under a rack of coats. McPherson retrieved and identified the coat as a sapphire mink coat valued at $10,995. He noted that two security devices had been removed from the coat.

The police arrived within five minutes and brought defendant back into the store. McPherson searched the pockets of the coats on the rack from where the stolen coat had been taken and retrieved a sensor tag from the pocket of another coat.

Fur salesman Ed Ross testified to the same essential facts as McPherson. Ross stated that he heard the inner door buzzer sound when defendant and Walker were leaving the store. Ross also saw Walker pull a fur coat out from underneath her skirt, and he saw the coat drop to the floor.

Niles police officer Elenz testified on behalf of the State that on February 27, 1991, he responded to the hold-up alarm activated at

Dion Furs and received a description of suspects. Officer Elenz approached the scene and saw defendant in the parking lot. The officer pulled his squad car up to defendant's car and asked defendant to exit his car. Officer Elenz saw a woman's purse on the passenger seat of defendant's car. After Officer Elenz received a radio message from Niles police officer Wilson, he arrested defendant, then entered defendant's car and removed the purse. Inside the purse, he found a pair of bolt cutters. Officer Elenz stated that he prepared a theft report based on interviews with witnesses McPherson and Ross.

Following this testimony, the State rested its case. The trial court denied defendant's motion for directed finding, and the defense also rested. The jury returned a verdict finding defendant guilty of retail theft. After a hearing, the trial court sentenced defendant to two years' probation. Defendant's timely appeal followed.

■ Initially, defendant contends that the State failed to prosecute him on the charge of retail theft within the requisite statutory 160 days of his demand for trial, under section 103—5(e) of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 103—5(e) (now 725 ILCS 5/103—5(e) (West 1994)).) Defendant argues that 229 days elapsed between his June 22, 1992, demand for trial and his trial for retail theft on March 31, 1993, and that the State abused its right to change its election in order to circumvent the statutory time limit.

Section 103—5(e) provides in pertinent part:

"(e) If a person is simultaneously in custody upon more than one charge pending against him *** or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried *** upon at least one such charge before expiration relative to any of such pending charges of the period prescribed ***. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered ***." Ill. Rev. Stat. 1991, ch. 38, par. 103—5(e).

In reliance on *People v. Goins* (1988), 119 Ill. 2d 259, 518 N.E.2d 1014, and *People v. Hollowell* (1979), 78 Ill. App. 3d 515, 397 N.E.2d 245, defendant argues that the violation of bail bond charge is not "separate and distinct" from the retail theft charge; thus, the charges were not multiple and the State did not have an additional 160 days from the disposal of the violation of bail bond charge to proceed on the retail theft charge.

*Goins* and *Hollowell* are distinguishable from the present case and therefore not persuasive. In *Goins*, defendant was indicted for

burglary in Kane County, but an investigation disclosed that the burglary actually occurred in Du Page County. While defendant remained in custody in Kane County, defendant was indicted for the same offense in Du Page County. The Kane County indictment was nol-prossed, defendant was transferred to Du Page County for trial, and was convicted. The supreme court reversed defendant's conviction, finding that defendant was not tried within 120 days of his being taken into custody as required by section 103—5(a) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1983, ch. 38, par. 103—5(a).) The court found that the Du Page County indictment did not allege a separate offense, but simply cured the venue defect in the Kane County indictment. The court held that charging the defendant with the State's delay in ascertaining the county where the alleged offense was committed would circumvent the protection which the speedy trial statute was designed to provide. (*Goins*, 119 Ill. 2d at 267.) The present case does not present a similar factual situation.

*Hollowell* is similarly distinguishable. There, the defendant was on probation when he was charged with theft of property. Subsequently, defendant's probation was revoked; he was ordered held without bond pending sentencing; and he was subsequently sentenced to a term of three to nine years. Meanwhile, at a preliminary hearing regarding defendant's theft case, defendant filed a demand for a speedy trial. At the conclusion of the hearing, defendant was ordered released on his own recognizance, but remained in confinement due to the sentence imposed following the revocation of his probation. Following a bench trial, defendant was convicted of theft and sentenced concurrent with his previous conviction. Defendant appealed his theft conviction, contending that he was not tried within the statutory 120 days.

On appeal, this court found that the petition to revoke probation was not a "charge" within the purport of the speedy trial statute, and that defendant must have been tried within 120 days from the time he was "in custody" on the felony theft charge. The court explained that the legislature set up a separate statutory scheme for the treatment of criminal trials versus revocation hearings. The court reversed defendant's conviction. *Hollowell*, 78 Ill. App. 3d at 516-17.

The present case does not involve a charge and conviction for revocation of probation, but rather a violation of bail bond. Defendant fails to cite any authority to support its contention that a violation of bail bond charge is not a separate "charge."

Defendant's further reliance on *People v. Hatchett* (1967), 82 Ill. App. 2d 40, 226 N.E.2d 97, is similarly unpersuasive. In *Hatchett*, the

State conceded that charges contained in three indictments against the defendant arose out of the same factual situation. The court stated: "[t]he People may not avoid and evade the constitutional provision or the statute by returning indictment after indictment in order to either toll the statute or extend the time." (*Hatchett*, 78 Ill. App. 2d at 50.) The court further found that the trial delay caused by the State's Attorney's illness did not justify delay of the trial. The record in the present case does not reveal similar dilatory tactics on the part of the State.

The State responds that, in the present case, defendant's trial on the retail theft charge was timely under *People v. Holmes* (1992), 234 Ill. App. 3d 931, 601 N.E.2d 985. There, the defendant was arrested for murder while he was out on bond awaiting trial on a robbery offense. On May 1, 1987, defendant filed a written demand for trial on the murder charge. The State initially elected to proceed on the murder charge and trial was set for October 3, 1988, and continued on the State's motion to October 24, 1988. At that time, the State changed its election to the robbery charge. On November 15, 1988, the defendant was tried and convicted for robbery, and on December 15, 1988, was sentenced to three years' imprisonment. On March 15, 1989, the date set for his murder trial, defendant filed a motion to dismiss for failure to comply with the speedy trial act. The trial court denied defendant's motion, stating that he was properly tried on the first charge within 120 days.

On appeal, Holmes argued that while the State had a legal right to change its election, the State here changed its election improperly to occasion delay. This court found that the State did not violate the speedy trial act by changing its election because the defendant failed to show that he was first brought to trial on one of the charges after the initial time period prescribed by the act had passed. *Holmes*, 234 Ill. App. 3d at 938.

Similarly, in the present case, the record indicates that following defendant's violation of bail bond trial, the case was continued twice by motions of the State, for a period of 53 days ending on January 4, 1993. After that, the case was continued for 35 days, by motion of the defendant until February 8, 1993. The case was then continued again for a period of 51 days by motion of the State. The trial commenced on March 31, 1993, 139 days after a verdict was rendered on the violation of bail bond charge.

Defendant argues that *Holmes* is distinguishable because there, the State changed its election only once, whereas in the present case, the State changed its election three times. However, defendant has not brought to this court's attention any authority supporting his

contention that the State may not change its election more than once before expiration of the statutory time period. Defendant has not shown that he was brought to trial on the retail theft charge after 160 days had passed.

■ In the alternative, defendant contends that he was deprived of his sixth amendment right to a speedy trial on the retail theft charge under the criteria enunciated in *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182. There, the United States Supreme Court set forth the following inquiry to determine whether a defendant's constitutional rights to a speedy trial have been violated: (1) whether the delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as the delay's result. *Doggett v. United States* (1992), 505 U.S. 647, 120 L. Ed. 2d 520, 112 S. Ct. 2686, citing *Barker*, 407 U.S. at 530, 33 L. Ed. 2d at 117, 92 S. Ct. at 2192.

Defendant argues that the "lengthy time lapse was excessive and unwarranted," and that the delay in trial "had the oppressive effect of extending [defendant's] curfew, of forcing him excessive travel to and from the community of North Chicago, and of making it impossible to maintain steady employment."

We note that although the constitutional and statutory provisions address similar concerns, the rights established by them are not necessarily coextensive. (*Holmes*, 234 Ill. App. 3d at 940, quoting *People v. Garrett* (1990), 136 Ill. 2d 318, 323.) The distinction between a violation under the statute and an alleged denial of a constitutional speedy trial is the degree of proof. Under the statute, a defendant is not required to show actual prejudice caused by the delay. However, a sixth amendment challenge requires not only a delay, but also substantial damage to defendant's ability to prepare for trial. *Holmes*, 234 Ill. App. 3d at 940, citing 5 L. Pieczynski, Illinois Practice § 10.4, at 275 (1989).

■ Under the facts of the present case, defendant has failed to show that a balancing of the proper criteria reveals that he was denied his constitutional rights. First, defendant has not shown that the delay in prosecuting the retail theft case was uncommonly long. In *Doggett*, the Supreme Court found a delay of 8$^1$/$_2$ years uncommonly long. In the present case, the record shows that defendant filed his motion to dismiss on February 8, 1993, prior to the expiration of 160 days following his first trial. Second, the record indicates that the delay was attributable to both the State and the defendant, each party requesting and receiving continuances at various times.

Third, defendant first asserted his trial demand orally on June 22, 1992, and made a written request on August 14, 1992, after being granted a continuance for status. The record indicates that although defendant continued to demand a trial, many agreed continuances were entered. Finally, the record fails to show that defendant was prejudiced by the delay in his ability to prepare for trial.

We therefore find that defendant has failed to show that the delay occasioned in the present case denied either his statutory or constitutional right to a speedy trial.

Next, defendant contends that he was denied his sixth amendment right to a jury drawn from a fair cross-section of the community (U.S. Const., amend. VI; *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692), when the trial court refused to dismiss the jury venire consisting of only one African-American prospective juror. Defendant argues that the sole African-American in the jury pool of 40 to 50 venirepersons represented 2.5% of the venirepersons, a disproportionately small number of African-Americans available for jury selection in the 10th Congressional District, which has a 6.2% African-American population, according to the 1990 census. Relying on *Taylor* and *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, defendant argues that the system for assembling prospective jurors amounts to an irregularity in the jury list, resulting in the underrepresentation of African-Americans.

■ In order to establish a *prima facie* violation of the fair-cross-section requirement, a defendant must show that: (1) the group allegedly excluded is a distinctive group in the community; (2) the underrepresentation of that group in venires, from which juries are selected, is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to the systematic exclusion of that distinctive group in the jury selection process. (*Duren*, 439 U.S. at 364, 58 L. Ed. 2d at 586-87, 99 S. Ct. at 668; *People v. Flores* (1990), 193 Ill. App. 3d 501, 506-07, 549 N.E.2d 1342.) The State concedes that defendant has met the first element of his *prima facie* case, in that African-Americans are a distinctive group in the community (*People v. Sledge* (1989), 183 Ill. App. 3d 1035, 1044, 539 N.E.2d 1312), but argues that defendant has failed to establish the second and third elements.

Section 9.2 of the Jury Commission Act (Act) provides that, in single-county judicial circuits containing more than 1 million inhabitants, jurors may be drawn from such parts of the county as are determined by court rule to be most favorable to an impartial trial and to not incur unnecessary expense or unduly burden the citizens. (705 ILCS 310/9.2 (West 1992).) Cook County Circuit Rule 0.4 (Cir. Ct.

Cook County R. 0.4 (eff. July 1, 1976)) implements section 9.2 of the Act, dividing Cook County into northern and southern halves by zip code, for purposes of jury selection. See *People v. Peeples* (1993), 155 Ill. 2d 422, 616 N.E.2d 294.

■ The record indicates that defendant was tried in Skokie, a northern suburb of Chicago, located in the second municipal district of the circuit court of Cook County; the crime occurred in Niles, also within the second municipal district; and defendant resided in North Chicago. All of these places are located in the northern half of Cook County. In *Peeples*, our supreme court determined that the proper analysis for determining underrepresentation of African-Americans in jury venires is to compare the number of African-Americans on jury venires in the appropriate district to the number of African-Americans in the appropriate community, *i.e.*, the appropriate half of Cook County. (*Peeples*, 155 Ill. 2d at 452.) In the present case, defendant has failed to compare the numbers in the jury venire in the second municipal district to the proper community, the northern half of Cook County. Thus, defendant has failed to support his contention that the underrepresentation of African-Americans in jury venires in the 10th Congressional District is not fair and reasonable in relation to the number of such persons in the community.

In addition, the record provides no evidence to support defendant's contention that the underrepresentation of African-Americans is due to the systematic exclusion of that distinctive group in the jury selection process in the 10th Congressional District. Defendant has objected to only the venire applicable to the present case.

The record indicates that defendant has failed to establish a *prima facie* violation of the fair-cross-section requirement; thus, defendant has not shown that the trial court erred in refusing to dismiss the venire.

■ Finally, defendant contends that the trial court erred when it refused to allow defense counsel to question Officer Elenz on cross-examination regarding matters allegedly omitted from his police report. Defendant argues that he was denied his constitutional right to confront the witnesses against him.

The record shows that, at trial, defense counsel attempted to question Officer Elenz on cross-examination as to whether he omitted from his police report certain information gleaned from his interviews with witnesses McPherson and Ross. The trial court sustained the State's continuing objections to her line of questioning. Defense counsel explained that she was attempting to impeach the testimony of McPherson, who testified on direct examination that defendant pushed the door buzzer to let Walker out of the store. The trial court

indicated that it was improper for defense counsel to attempt to impeach the testimony of one witness through the cross-examination of another witness.

This court encountered a similar situation in *People v. Gagliani* (1991), 210 Ill. App. 3d 617, 569 N.E.2d 534. There, the complainant testified that she saw the defendant's face in her mirror as she attempted to turn off her television set. On cross-examination, the complainant testified that she believed she told this to investigating officers. When the investigating officer testified, defense counsel asked him whether the complainant told him that she saw the reflection, and the trial court sustained the State's hearsay objections. *Gagliani*, 210 Ill. App. 3d at 628.

On appeal, this court upheld the ruling of the trial court, finding that it is improper to impeach the complainant's testimony based on an alleged omission in a police report. The court held that police reports can only be used to impeach the officer who actually wrote the report. *Gagliani*, 210 Ill. App. 3d at 629, citing *People v. Gomez* (1982), 107 Ill. App. 3d 378, 382.

The record shows that on cross-examination of McPherson, defense counsel did not attempt to impeach him regarding what information he told police. Defendant has failed to cite to any specific place in the record wherein defense counsel laid a proper foundation to cross-examine the police officer regarding alleged omissions from his report. Absent a proper foundation, the trial court correctly found defendant's attempted impeachment improper.

For all of the reasons stated, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY and EGAN, JJ., concur.