# Illinois Official Reports

## Appellate Court

---

### *People v. Echols*, 2018 IL App (1st) 153156

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARL ECHOLS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-15-3156 |
| Filed | July 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-13441; the Hon. Mary C. Robert, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and John R. Breffeilh, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Justices Howse and Lavin concurred in the judgment and opinion. |

¶ 1    Defendant, Earl Echols, appeals the denial of his motion to dismiss the indictment for aggravated driving under the influence of a controlled substance. Echols contends that he was denied his constitutional right to a speedy trial when the State failed to produce him for trial until one year after the offense was committed even though he was in State custody during that time. For the reasons that follow, we affirm.

¶ 2                                              I. BACKGROUND

¶ 3    On the evening of December 25, 2013, Echols was arrested after crashing his vehicle into a fire hydrant, several parked cars, and a building.[1] At the hospital, Echols told the investigating officers that he had "smoked some PCP and passed out." Echols was charged with misdemeanor driving under the influence (DUI) of an intoxicant and appeared in court for his bond hearing the following day. On January 27, 2014, the court granted the State's motion for *nolle prosequi* and the misdemeanor charges were dropped. Counsel noted, during argument on the motion to dismiss, that it was unclear whether the public defender representing Echols informed him that the misdemeanor charge had been nol-prossed because the State intended to file felony charges at a later time.

¶ 4    Due to the misdemeanor arrest, Echols's probation from a prior offense was revoked on February 28, 2014.[2] Four days later, he was transferred from the custody of the Cook County Sheriff to the Illinois Department of Corrections. On July 28, 2014, a grand jury indicted Echols on five counts of aggravated DUI. The State sent notice of the arraignment court date to Echols's last known address. On August 11, 2014, Echols was not present for arraignment. The State requested a three-week continuance to resend notice of a new court date after indicating that a copy of the indictment letter was missing from its file. At the next hearing on September 2, 2014, Echols was still incarcerated, had not received the notices, and as such did not appear. The court issued an arrest warrant and ordered Echols's bail forfeited based on the State's representations that it had sent proper notice to him of both court dates.[3]

¶ 5    Echols remained in custody at Stateville Correctional Center until April 3, 2015. The day after completing his probation revocation sentence, Echols was arrested on the outstanding warrant in this case. He was arraigned on April 6, 2015, and attended a bond review hearing three days later. At the bond review hearing, the State noted for the record that standard operating procedure upon issuing a warrant includes running a computerized custody check. However, when the State ran a local, state, and federal custody check on September 2, 2014, the results failed to reveal Echols's incarceration on his probation revocation. Therefore, the court issued a $50,000 bond and set the next court date.

¶ 6    On April 16, 2015, Echols filed a motion to dismiss the charges arguing that his constitutional right to a speedy trial had been violated. The State tendered a written response

---

[1]The building was empty at the time, and no one was physically injured by the crash other than Echols.

[2]It is unclear from the record whether Echols had been released from custody on January 27, 2014, and taken back into custody on February 28, 2014.

[3]Copies of these notices are not provided in the common law record; however, the report of proceedings indicates that copies were shown to the trial court prior the issuance of the arrest warrant.

the following month. On May 27, 2015, after hearing argument, the court denied the motion and proceeded to a bench trial. The bench trial was conducted over the course of two days and included testimony from two responding officers and stipulations as to the testimony of the eyewitness to the crash, the nurse who collected the DUI kit from Echols, and the forensic scientist who tested the DUI kit samples. Echols's urine tested positive for phencyclidine (PCP) and morphine. Additionally, vehicle records were entered into evidence showing that he owned the vehicle involved in the crash. The defense rested without presenting any evidence. After brief closing arguments, the court found defendant guilty on all five counts of aggravated DUI.

¶ 7         On October 2, 2015, the court denied Echols's motion for reconsideration or new trial and sentenced him to 18 months in the Illinois Department of Corrections with one year mandatory supervised release. The court noted that the five counts merged into one and denied Echols's oral motion to reconsider the sentence. This appeal followed.

¶ 8                                                    II. ANALYSIS

¶ 9         On appeal, Echols contends that the trial court erred in refusing to dismiss the charges on constitutional speedy-trial grounds. Echols argues that the trial court should have dismissed the charges because there was a 477-day delay in prosecution, he was in State custody for a majority of that delay, the delay was not attributable to him, and he was prejudiced by the lost opportunity to serve concurrent sentences. The State responds that the record does not support finding a 477-day delay, the delay was caused by the State's reasonable belief that Echols was not in custody, and that Echols suffered no prejudice from the delay.

¶ 10        Both the federal and state constitutions guarantee the right to a speedy trial. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The sixth amendment right to a speedy trial in the federal constitution is fundamental and is applicable to the states by the due process clause of the fourteenth amendment. See *Klopfer v. North Carolina*, 386 U.S. 213 (1967). We note that, although there is a statutory right to a speedy trial in Illinois (see 725 ILCS 5/103-5 (West 2014)), Echols only alleges a violation of his constitutional right.

¶ 11        Our supreme court has adopted the four-factor balancing test outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), for considering whether a defendant's constitutional right to a speedy trial has been violated. *People v. Bazzell*, 68 Ill. 2d 177, 182 (1977). To determine whether a violation has occurred, we must balance (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No single factor is regarded as "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. All the factors are related and must be considered along with other relevant circumstances in assessing whether a defendant's fundamental right to a speedy trial has been violated. *Id.* "[T]he ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review." *People v. Crane*, 195 Ill. 2d 42, 52 (2001). However, we will uphold the trial court's factual determinations unless they are against the manifest weight of the evidence. *Id.* at 51. Here, the facts are undisputed, and we review the matter *de novo*.

¶ 12                                              A. Length of Delay

¶ 13        The parties disagree on the length of time Echols was deprived of a speedy trial and whether the delay was sufficient to raise a constitutional question. Echols argues he suffered

477 days of delay from the offense date to the date he filed his motion to dismiss.[4] The State contends that the delay was no more than 250 days commencing from either the issuance of the indictment or the arrest warrant to Echols's actual arrest on that warrant.[5] To resolve this disagreement, we must determine the effect of nol-prossing charges on a defendant's constitutional right to a speedy trial.

¶ 14                                    1. The Effect of *Nolle Prosequi*

¶ 15        Echols contends that the six-month delay between the State's motion to nol-pros the misdemeanor charges and the subsequent felony indictment must be considered as a delay affecting his right to a speedy trial. The State responds that the speedy-trial right accrued either when Echols was formally indicted on felony charges or when the arrest warrant was issued.

¶ 16        "The right to a speedy trial guaranteed by the sixth amendment (U.S. Const., amend. VI) applies only within 'the confines of a formal criminal prosecution,' that is, once a defendant has been arrested or charged." *People v. Totzke*, 2012 IL App (2d) 110823, ¶ 19 (quoting *Doggett v. United States*, 505 U.S. 647, 655, (1992)). Thus, the right to a speedy trial does not accrue until the defendant is accused. *United States v. Marion*, 404 U.S. 307, 320 (1971); *People v. Mitchell*, 356 Ill. App. 3d 158, 161 (2005). It is the actual restraint imposed on a defendant's liberty by arrest, formal indictment or information, and holding the defendant to answer the charges that engage the particular speedy-trial protections. *Marion*, 404 U.S. at 320; *People v. Gimza*, 56 Ill. App. 3d 477, 481 (1977).

¶ 17        In *Totzke*, the Appellate Court, Second District addressed the effect of *nolle prosequi* in the context of a claimed speedy-trial constitutional violation. 2012 IL App (2d) 110823, ¶ 1. The defendant in that case was arrested and charged by complaint in January 2008 for resisting and injuring a police officer. *Id.* ¶ 3. After bonding out, she was formally charged by information, and the case was continued multiple times on motions by both parties. *Id.* ¶¶ 4-5. In February 2010, after the court denied the State's second motion to continue the trial date, the State moved to nol-pros the charges. *Id.* ¶¶ 5-6. In December 2010, the defendant was indicted for the same offense. *Id.* ¶ 7. The defendant moved to dismiss the charges claiming a lengthy delay in violation of her due process and constitutional right to a speedy trial. *Id.* ¶ 8. The trial court granted the motion on constitutional speedy-trial grounds. *Id.* ¶ 15.

¶ 18        On review, the appellate court found that the trial court erred in its application of due process and speedy-trial principles. *Id.* ¶ 37. The court observed that the effect of *nolle prosequi* in Illinois left no criminal charges pending against the defendant. *Id.* ¶ 23. Where no formal charges were pending, a speedy-trial analysis is inapplicable. *Id.* ¶ 25. "[A]ll of the time that the defendant *is* facing charges on the same matter" are, however, subject to a speedy-trial analysis. (Emphasis in original.) *Id.* ¶ 31. Accordingly, the appellate court calculated the length of delay from the defendant's initial arrest in January 2008 through her motion to dismiss on speedy-trial grounds, excluding the 285-day delay when no charges were pending. *Id.* ¶ 33. Thus, the court vacated the dismissal and remanded for reconsideration of the different periods of delay under the appropriate constitutional analysis. *Id.* ¶ 37.

---

[4]Approximately 16 months from December 25, 2013, to April 16, 2015.

[5]Approximately seven to eight months starting from either July 28, 2014, or September 2, 2014, to April 4, 2015.

¶ 19    Following the reasoning in *Totzke*, we determine that 295 days[6] of delay elapsed between Echols's initial arrest and the date that he first moved to dismiss on constitutional speedy-trial grounds. Consistent with *Totzke*, our calculated length of delay excludes the 182 days[7] between the misdemeanor *nolle prosequi* and the subsequent felony indictment.

¶ 20                                         2. Presumptively Prejudicial

¶ 21    The State argues that Echols's constitutional challenge should fail at the outset because the length of delay he suffered was not presumptively prejudicial. Generally, a speedy-trial inquiry is not triggered unless the complained-of delay crosses the threshold from ordinary to presumptively prejudicial. *Crane*, 195 Ill. 2d at 52. Courts have recognized one year as the threshold. *Id.* at 52-53. Even so, a "presumptively prejudicial" delay does not imply that the one-year delay has actually prejudiced the defendant; it is only the point at which delay is deemed unreasonable enough to trigger a constitutional inquiry. *Id.* at 53. If a delay is determined presumptively prejudicial, the court must then continue its analysis and balance the remaining *Barker* factors. *People v. Singleton*, 278 Ill. App. 3d 296, 299 (1996).

¶ 22    Here, by our calculation, Echols suffered a 295-day delay or approximately 10 months. This period of delay falls short of the one-year threshold for triggering a constitutional analysis. Generally, when the complained-of delay does not meet the threshold, a full *Barker* analysis is not warranted. See, *e.g.*, *People v. Beard*, 271 Ill. App. 3d 320, 328 (1995) (229-day delay insufficient to trigger full analysis); *People v. Chambers*, 258 Ill. App. 3d 73, 80 (1994) (a six-month delay is not presumptively prejudicial). We note however, that the Appellate Court, Second District has specified that a delay, which is *nearing* a year, is sufficient to trigger a full analysis of the remaining *Barker* factors. *People v. Silver*, 376 Ill. App. 3d 780, 784 (2007); *People v. Lock*, 266 Ill. App. 3d 185, 191 (1994). Similarly, federal courts addressing the same issue have found that delays ranging from 9 to 11 months are sufficient to trigger a more searching analysis. See, *e.g.*, *United States v. Carrol*, 228 F. App'x 605, 607 (7th Cir. 2007); *United States v. White*, 443 F.3d 582, 589-590 (7th Cir. 2006); *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000). Therefore, we consider defendant's 295-day delay sufficiently close to the one-year threshold to support our further examination of the other *Barker* factors.

¶ 23                                         B. Reason for Delay

¶ 24    Echols argues that the State has not provided justification for the 477-day delay. Echols contends that he did nothing to cause these delays and they are attributable to, and should weigh heavily against, the State.[8] The State responds that there is no evidence that the State

---

[6]Approximately 10 months from December 25, 2013, to January 27, 2014, and July 28, 2014, to April 16, 2015.

[7]Approximately six months from January 27, 2014, to July 28, 2014.

[8]Echols further summarily argues that he suffered additional, unnecessary confinement totalling 216 days awaiting trial and sentencing in this case. We do not address this length of delay or the reasons for this delay in our review of whether the motion to dismiss, at the time it was considered, was improperly denied.

deliberately caused any delay in order to gain an advantage against Echols. Rather, the State contends that it performed its due diligence[9] and the delay was justifiable.

¶ 25    We assign different weight to the reasons offered to explain the delay. *Crane*, 195 Ill. 2d at 53. It is the State's burden to justify any delay that has occurred. *Id.* Reasons, such as the unavailability or inability to locate a witness, despite diligent efforts, to secure testimony may be found valid and excusable, while others, such as the State's intentional delay to gain a tactical advantage, will be found wholly unacceptable. *Id.* at 53-54. In between diligent prosecution and bad-faith delays, there may be neutral reasons for a delay, which will still be attributed to and weighed against the State, such as a crowded court docket (*People v. Wills*, 153 Ill. App. 3d 328, 336 (1987)) or faulty police procedure, negligence, or incompetence (*Singleton*, 278 Ill. App. 3d at 300). These neutral reasons are weighed against the State more lightly than bad-faith delay but must still be given some weight. *People v. Belcher*, 186 Ill. App. 3d 202, 206 (1989). A defendant need only show that the delay was not attributable to his actions. *People v. Prince*, 242 Ill. App. 3d 1003, 1009 (1993).

¶ 26    As previously discussed, we determined that Echols experienced 295 days of delay rather than 477 days. These 295 days fall within three distinct time periods, which we will discuss separately in order to determine the validity of the State's reason for each period of delay. The first 33 days of delay commenced from the time of defendant's initial arrest and for the period leading up to and concluding with the State's *nolle prosequi* of the misdemeanor charges. In most circumstances, a decision to nol-pros a case will not be held against the State unless it was used to circumvent the defendant's statutory speedy-trial right or gain some tactical advantage.[10] *People v. Castillo*, 372 Ill. App. 3d 11, 17-18 (2007). A decision to dismiss a case by *nolle prosequi* early in the proceedings and later refile charges arising from the same offense does not indicate bad faith or intentional manipulation by the State. See, *e.g.*, *People v. Weddell*, 405 Ill. App. 3d 424, 436 (2010) (the decision to refile identical charges after a *nolle prosequi* 78 days into the statutory speedy-trial term did not evince an attempt to manipulate the system); *Castillo*, 372 Ill. App. 3d at 19 (the decision to refile charges after a *nolle prosequi* 24 days into prosecution did not frustrate speedy-trial interests). Thus, the first 33 days of the 295-day delay do not weigh against the State, but neither are they attributable to Echols.

¶ 27    Next, there was a delay of 250 days between the formal indictment and Echols's arrest under the indictment. For 249 days of the 250-day delay, Echols was incarcerated in the Illinois Department of Corrections on an unrelated probation revocation sentence. The State erroneously believed that Echols was not in custody and had failed to appear to answer the charges.

¶ 28    The State attempts to justify this delay by asserting its reasonable reliance on the computerized custody check that informed its belief that Echols was not in custody. Further, the State suggests that Echols's criminal history, which reflected prior uses of aliases and false

_____

[9]The State cites an unpublished federal case (*United States v. Smith*, 1993 U.S. App. Lexis 39655, *11-12) in support of the proposition that its actions constituted due diligence.

[10]Although Echols does not argue a statutory speedy-trial violation, the issue of *nolle prosequi* is more commonly discussed under a statutory speedy-trial analysis because of its effect on tolling the speedy-trial period. See *People v. Decatur*, 191 Ill. App. 3d 1034 (1989). Here, the statutory speedy-trial analysis is helpful in determining the validity of State's justification for nol-prossing the misdemeanor charge and the weight to given to its reason.

identifying information, contributed to the erroneous custody check results and therefore the reason for the delay should be weighed against Echols. We acknowledge that we have held the use of an alias, which actively interferes with the police's and the State's attempts to locate a defendant, creates delay attributable to the defendant. See *People v. Rievia*, 307 Ill. App. 3d 846, 853 (1999). However, in this case, there was no evidence that Echols was charged in the present case or served his probation revocation under an alias. Thus, there is no reason to attribute the delay to Echols on the basis of his past behavior.

¶ 29    In *Singleton*, the State was found negligent in failing to prosecute the defendant for the four years following his formal indictment despite the fact that the defendant had entered state custody four times during the intervening period. 278 Ill. App. 3d at 297, 300. Further, the State had initially prosecuted the defendant on other charges arising out of the same series of drug transactions but did not prosecute the charge at issue in the motion to dismiss. *Id.* Although the State argued that the delay in prosecution was attributable to the defendant because he became a "fugitive" and the State did not know where he was for 32 months, the court found that the State could not justify its failure to locate and prosecute defendant in a timely manner. *Id.* at 300.

¶ 30    Similarly, we find that the State's failure to bring Echols before the court after he was indicted, despite his incarceration within the state of Illinois, constituted negligence attributable to the State. There is no contention that Echols was not actually in custody, nor did the State provide an explanation for the erroneous custody check. Thus, there is no valid justification for the 250-day delay between the indictment and subsequent arrest after Echols was released from state custody.

¶ 31    However, the lack of justification does not weigh heavily against the State. Our supreme court in *Crane* noted that tolerance of the negligence varies inversely with the length of the delay caused and its threat to the fairness of the defendant's trial. *Crane*, 195 Ill. 2d at 57 (citing *Doggett*, 505 U.S. at 657). Our tolerance for some delay is due to the fact that the right to a speedy trial should always be in balance, and not inconsistent, with the rights of public justice. *Id.* at 47 (citing *Barker*, 407 U.S. at 522). The State attempted to locate Echols by contacting him twice at his last known address and performing a computerized custody check. Although the custody check returned erroneous results, there is no evidence of bad faith, and we will not heavily penalize the State for its failing.

¶ 32    Lastly, the 12 days between defendant's felony arrest and his motion for dismissal are not attributable to, nor do they weigh against, either party. This time period does not demonstrate a lack of diligence by the State in prosecuting Echols. Echols did not draw out the delay and promptly raised the issue by filing his motion to dismiss through counsel.

¶ 33                              C. Assertion of Right; Waiver of Right

¶ 34    Having considered the reasons for the delay, we turn to Echols's assertion of his right to a speedy trial. The record reveals that Echols did not make a speedy-trial demand at any time before he filed his motion to dismiss. He nonetheless argues that this factor should weigh against the State because it had a duty to advise him of the charges while he was in State custody. He also argues, without citation to authority, that his motion to dismiss was an assertion of his right to a speedy trial.

¶ 35    We disagree. Typically, a failure to assert the right to a speedy trial weighs heavily against a defendant unless he or she was unaware of the charges. See *Doggett*, 505 U.S. at 653; *People*

*v. Leavitt*, 2014 IL App (1st) 121323, ¶ 88; *Silver*, 376 Ill. App. 3d at 785; *Belcher*, 186 Ill. App. 3d at 204. No evidence was presented that Echols was aware of the felony indictment before his arrest in April 2015. Under such circumstances, this factor is irrelevant to our consideration. See *Leavitt*, 2014 IL App (1st) 121323, ¶ 88 (collecting cases). We therefore conclude that defendant's failure to assert his right to a speedy trial weighs against neither party in this case.

¶ 36                                                    D. Prejudice

¶ 37        Echols next argues that he suffered severe prejudice when he lost the opportunity to serve concurrent sentences for the aggravated DUI and his probation revocation. The State responds that without showing some manner of impact to his defense, Echols cannot demonstrate prejudice warranting dismissal of the charges.

¶ 38        In assessing whether the delay caused prejudice to the defendant, courts must consider the defendant's interests that the speedy-trial right was designed to protect: (1) preventing undue and oppressive pretrial incarceration, (2) minimizing the anxiety and concern that accompanies public accusations, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Both the Illinois and United States Supreme Court have considered the impaired-defense interest to be the most serious because a defendant's inability to adequately prepare his case " 'skews the fairness of the entire system.' " (Internal quotation marks omitted.) *People v. Kaczmarek*, 207 Ill. 2d 288, 299 (2003) (quoting *Doggett*, 505 U.S. at 654).

¶ 39        As Echols was incarcerated due to an unrelated probation revocation during the claimed delay, we cannot say that he was subjected to undue and oppressive pretrial incarceration. Regardless of whether these charges were pending, he would have been incarcerated. Thus, the restraint on his liberty was not due to the State holding him to await trial in this case. Further, Echols cannot demonstrate any anxiety or concern about the pending charges because he was unaware of the indictment against him. Lastly, Echols did not present any argument that his defense was impaired by the delay. He did not lose access to any witnesses, there was no evidence that witness memories had faded, nor was any evidence lost during the intervening time.

¶ 40        Although we find that Echols was not subjected to undue and oppressive pretrial incarceration, we agree with Echols that a defendant who is already imprisoned can be injured by trial delay that prevents him from receiving a sentence at least partially concurrent with the one he was receiving. *People v. Howell*, 119 Ill. App. 3d 1, 7-8 (1983) (citing *Smith v. Hooey*, 393 U.S. 374, 378 (1969)). "However, such a loss does not, per se, result in a denial of defendant's right to a speedy trial." *People v. Harflinger*, 49 Ill. App. 3d 31, 36 (1977) (citing *Trig v. Tennessee*, 507 F.2d 949 (6th Cir. 1974)). Both *Howell* and *Harflinger* are instructive.

¶ 41        In *Howell*, the defendant was arrested for rape in Illinois after escaping from federal custody in Florida. 119 Ill. App. 3d at 3. After being convicted and sentenced in 1970, he also escaped from Illinois state custody. *Id.* While a fugitive, the defendant was again arrested and convicted in Texas for robbery. *Id.* After being paroled in Texas, the defendant was transferred to federal custody to complete the original federal sentence he had previously evaded as well as his sentence for the Florida escape charge. *Id.* at 4. The State indicted the defendant for his escape from Illinois state custody in 1981 and sought to prosecute him after he was released from federal custody. *Id.* The defendant complained that his speedy-trial right was violated by the lengthy delay, the State's failure to seek extradition, and his lost opportunity to secure

concurrent sentences. *Id.* at 5, 7-8. The court determined that the delay was not caused by the State's bad faith, the defendant failed to assert his speedy-trial right, and that the defendant's defense was not impaired in any manner. *Id.* at 9.

¶ 42    In *Harflinger*, the defendant was indicted in 1972 but prosecution did not begin until 1975, when he was paroled from federal custody and transferred to Illinois to answer the outstanding arrest warrants. 49 Ill. App. 3d at 33. The court acknowledged that there was a three-year delay during which the defendant could have secured concurrent sentences and the delay was attributable to the State's lack of due diligence. *Id.* at 35-36. However, the defendant did not assert his speedy-trial right, despite knowing about the pending charges, and suffered no prejudice in preparing his defense. *Id.* at 36.

¶ 43    In both *Howell* and *Harflinger*, the court held that the defendant's speedy-trial right was not violated despite the lost opportunity to secure concurrent sentences. Neither defendant addressed the primary concern under the speedy-trial analysis by demonstrating an impact on the ability to prepare his defense. Viewed in combination with the other *Barker* factors, the lost opportunity for concurrent sentences did not create significant prejudice to the defendants. Thus we acknowledge Echols's contention that his lost opportunity to secure a concurrent sentence demonstrates some prejudice to him, but we decline to find that it weighs heavily against the State without any evidence of impairment to his defense.

¶ 44    We acknowledge that the length of delay can affect the importance of finding prejudice to the defendant. Protracted delay can make it unnecessary for a defendant to show actual prejudice because excessive delay presumptively comprises a trial in way that neither party can identify or prove. *Doggett*, 505 U.S. at 656-58; *Silver*, 376 Ill. App. 3d at 786. However, where, like in the instant case, the delay is less than one year, a more particularized showing of prejudice must be shown. *Singleton*, 278 Ill. App. 3d at 301; *Lock*, 266 Ill. App. 3d at 192. Although we held that the overall 295-day delay was presumptively prejudicial and triggered a full *Barker* analysis, it was not so protracted as to relieve Echols from the burden of showing actual prejudice. Echols did not present evidence of a particularized prejudice impairing his defense and other interests protected by the speedy-trial right. Thus, neither the length of delay nor the prejudice resulting from the delay weighs heavily against the State.

¶ 45                              E. Cases Cited by Echols

¶ 46    Defendant cites *People v. Kilcauski*, 2016 IL App (5th) 140526, as analogous to his case. The case is clearly distinguishable. In *Kilcauski*, the court found that dismissal was warranted after the defendant was voluntarily transferred by the sheriff's department in Illinois to Missouri without proper extradition, which caused over a year of delay in his prosecution. *Id.* ¶ 28. After the defendant was transferred out of state, the felony and misdemeanor charges against him were dismissed for failure to conduct a preliminary hearing and nol-prossed, respectively. *Id.* ¶¶ 6-7. We note there are many distinctions between the facts of *Kilcauski* and Echols's circumstances. First, the court found that defendant endured a lengthy period of pretrial incarceration because defendant had not been released from state custody before the transfer. *Id.* ¶ 34. Therefore, the time between dismissal of the charges and his subsequent indictment the following year was considered in the court's review of prejudice to the defendant. *Id.* ¶ 29. Second, the State had actual knowledge of the defendant's whereabouts both by its discussion with the sheriff's department and through the defendant's attempt to assert his right to speedy trial and inform the State of his circumstances. *Id.* ¶¶ 31-32. Third,

the defendant presented evidence of actual prejudice, beyond the lost opportunity for concurrent sentencing, because he was unable to locate the only witness for his defense. *Id.* ¶ 33. Thus, all the *Barker* factors weighed in favor of the defendant in *Kilcauski* and, on balance, warranted dismissal of the charges.

¶ 47　　　Defendant's reliance on *Belcher*, 186 Ill. App. 3d 202, and *People v. Bredemeier*, 346 Ill. App. 3d 557 (2004), are equally unavailing. In *Belcher*, the appellate court found the length of the delay and the prejudice due to the length of the delay "were of such magnitude that [these two factors] overwhelmingly demonstrated" a violation of the defendant's right to a speedy trial. 186 Ill. App. 3d at 208. The court held that the 29-month delay and the State's lack of justification for the delay meant "it was unnecessary for defendant to show that he was prejudiced." *Id. Bredemeier* involved a delay in prosecuting a petition to revoke probation that is not subject to speedy-trial and did not rely on an analysis of the *Barker* factors for resolution. 346 Ill. App. 3d at 561.

¶ 48　　　　　　　　　　　　III. CONCLUSION

¶ 49　　　Here, viewing the reason for delay in Echols's case in conjunction with the other *Barker* factors, the length of the delay was not extremely protracted and did not present a threat to the fairness of Echols's trial. At most, Echols lost the opportunity to serve a partially concurrent sentence. In our review, the prejudice suffered by Echols due to the State's delay in producing him for court on the felony charges does not, on balance, warrant a finding that his speedy-trial right was violated. As such, the trial court was correct in denying Echols's motion to dismiss. For the reasons stated, we affirm the trial court's denial of Echols's motion to dismiss on constitutional speedy-trial grounds.

¶ 50　　　Affirmed.