2023 IL App (1st) 211554-U

No. 1-21-1554

Order filed September 15, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 7532 |
| | ) | |
| ROBERT HILL, | ) | Honorable |
| | ) | William B. Raines, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction is affirmed over his contention that he was denied his right to a speedy trial. Orders entered by the Illinois Supreme Court and the chief judge of the Circuit Court of Cook County during the height of the COVID-19 pandemic were constitutional.

¶ 2    Following a jury trial, defendant Robert Hill was found guilty of first degree murder and sentenced to 45 years in prison. On appeal, he argues his right to a speedy trial was violated where,

relying on improperly issued pandemic-related orders from the Illinois Supreme Court, the trial court detained him more than the 120-days before trial. We affirm.

¶ 3    As the pretrial proceedings are relevant here, we set them forth in detail. Hill was arrested on April 8, 2015. On May 8, 2015, he was charged by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2014)), premised on his killing Sandra Fellows on April 7, 2015. On May 20, 2015, Hill was arraigned. The parties agreed to continue the case during several court dates from May 20, 2015, to August 10, 2016.

¶ 4    On August 10, 2016, Hill filed a "motion to quash arrest and suppress evidence," which the court denied on October 19, 2016. Also on August 10, 2016, Hill filed a motion to suppress statements, which he amended on November 9, 2016. The court denied the motion on June 14, 2018. The parties agreed to a series of continuances while they conducted discovery.

¶ 5    On January 28, 2020, the parties agreed to a jury trial date of March 23, 2020. On March 23, 2020, the circuit court entered an order continuing the case to April 27, 2020, pursuant to the chief judge's General Administrative Order 2020-01 (Cir. Ct. Cook Cty. G.A.O. 2020-01 (eff. Mar. 17, 2020)), issued on March 13, 2020, in response to the rapidly spreading COVID-19 pandemic.

¶ 6    On March 20, 2020, the supreme court issued an emergency order directing that the chief judges of the circuits could continue trials for the following 60 days and until further order of the court and suspending the time provisions of the Speedy Trial Act (Act) (725 ILCS 5/103-5(b) (West 2020)) regarding those continuances. Ill. S. Ct. M.R. 30370 (eff. Mar. 20, 2020). It issued two subsequent orders to similar effect. Ill. S. Ct. M.R. 30370 (eff. Apr. 3, 2020; Apr. 7, 2020). The chief judge of the circuit court of Cook County issued multiple general administrative orders

setting forth directions for conducting court proceedings during the pandemic and observing that jury trials in criminal cases remained continued. See, *e.g.*, Cir. Ct. Cook Cty. G.A.O. 2020-02 (eff. July 6, 2020, eff. July 29, 2020, eff. Aug. 21, 2020, eff. Sept. 21, 2020); Cir. Ct. Cook Cty. G.A.O. 2020-07 (eff. Nov. 23, 2020). The chief judge's order entered on March 23, 2021, stated that jury trials would be "safely resume[d]" with a "target date***" of March 22, 2021, for criminal jury trials. Cir. Ct. Cook Cty. G.A.O. 2020-07 (eff. Mar. 23, 2021). However, the supreme court did not lift the toll on the statutory speedy trial time restrictions until October 1, 2021. Ill. S. Ct., M.R. 30370 (eff. June 30, 2021).

¶ 7    The parties appeared via Zoom on August 18, 2020, and agreed to continue the case to September 15, 2020, and then to October 5, 2020.

¶ 8    On October 5, 2020, the State and defense counsel appeared before the court. Defense counsel told the court that Hill still wanted a jury trial. The court replied, "My understanding is there won't be juries until probably after the 1st of the year." Defense counsel stated she understood but had a motion detailing her position that the suspension of the Speedy Trial Act (Act) (725 ILCS 5/103-5(b) (West 2020)) was unconstitutional. The court asked counsel to put the claim in writing and informed counsel that the supreme court had suspended jury trials based on the COVID-19 pandemic.

¶ 9    That same date, Hill filed a written demand for trial pursuant to the Act. The demand stated that it "remains in effect and continues even though defense counsel and [defendant] are mindful of the supposed suspension of the *** Act by the Illinois Supreme Court."

¶ 10    On November 18, 2020, and January 5, 2021, defense counsel reiterated that the demand for a speedy trial remained. The court stated Hill's demand for trial was "noted."

¶ 11    On February 8, 2021, Hill filed a motion to dismiss the case pursuant to the Act, asserting that he demanded a trial on October 5, 2020, and, as of February 7, 2021, had been in custody for 2130 days waiting for trial. He requested that the trial court immediately dismiss the case, as 125 days had passed since his speedy trial demand.

¶ 12    On April 9, 2021, the State filed a response, asserting that Hill's motion should be denied because the supreme court tolled the running of the statutory speedy trial term due to the ongoing COVID-19 pandemic, and the trial court was bound by that determination.

¶ 13    On May 11, 2021, the parties agreed to a jury trial date of June 22, 2021. The court stated the motion to dismiss could also be addressed on that date. On June 22, 2021, defense counsel requested that the motion be heard on July 6 because the parties could possibly settle the case prior to trial. The court continued the case.

¶ 14    The case was subsequently continued during the next two court dates. On July 15, 2021, Hill confirmed with the court that he was rejecting the State's plea offer.

¶ 15    The court then heard arguments on Hill's motion to dismiss and denied the motion. The court stated that the supreme court had suspended the Act, and the trial court was not in a position to overrule the supreme court.

¶ 16    The court set a jury trial date of August 16, 2021. On August 13, 2021, by agreement of the parties, the court set a jury trial date of September 28, 2021. On September 28, 2021, defense counsel told the trial court that Hill had "been informed that because of certain circumstances," they could not start the trial that day. The court then set a trial date of September 30, 2021, "by agreement."

¶ 17    The jury trial commenced on September 30, 2021. On that date, Hill told the court he had a "problem" with counsel agreeing to continuances of the case without his consent after the State "lost jurisdiction" by violating the Act. The court told Hill it was "sensitive" to the time defendant had spent in jail and was trying to resolve the case "as quickly as possible." The court explained that the supreme court had placed the Act on hold during the pandemic, which was not defense counsel's fault.

¶ 18    Because the sole issue on appeal only concerns Hill's pretrial proceedings, we will merely briefly summarize the facts adduced at trial.

¶ 19    Lakisha Whitehead testified that on the evening of April 7, 2015, she called her aunt Sandra Fellows, who had been dating Hill for two months. Whitehead had known Hill for seven or eight years. While Whitehead was on the phone with Fellows, she heard Hill and Fellows argue. The phone conversation then abruptly stopped. The next day, Whitehead received a call informing her that Fellows was dead.

¶ 20    Chicago police sergeant Michael Krueger testified that, on April 8, 2015, he and his partner Officer Matthew Graf found Fellows's vehicle, which had been reported stolen. They went to Fellows's apartment in the 6600 block of West Belden Avenue. At Fellows's apartment, Hill was in the doorway. The officers asked Hill if Fellows was at the apartment, and Hill told them she died yesterday. Graf stated they needed to return her vehicle's keys to someone. Hill offered to take them and said he was Fellows's boyfriend. Krueger asked Hill if there was any documentation of Fellows's death, and Hill stated he was there to "dispose of the body." Krueger asked Hill where Fellows was, and Hill pointed behind the front door. Krueger looked around the door and saw a deceased woman on the floor with blood coming from her mouth and nose.

¶ 21 Krueger handcuffed and Mirandized Hill and called paramedics. In a video-recorded interview, after Miranda warnings, Hill told detectives that, as Fellows struggled and kicked, he held her nose and mouth closed so she could not breath, and she died. A medical examiner testified that Fellows's death was a homicide, and that she died from asphyxiation due to smothering and manual strangulation.

¶ 22 The jury found Hill guilty of first degree murder.

¶ 23 Hill filed a motion for new trial and a supplemental motion for new trial, which alleged in relevant part that the trial court erred in denying his pretrial motion to dismiss the case based on a violation of the Act. The court denied the motions.

¶ 24 The trial court sentenced Hill to 45 years in prison for first degree murder.

¶ 25 On appeal, Hill argues that his constitutional right to a speedy trial was violated where the trial court detained him for more than 120 days in reliance on improperly issued pandemic-related orders by the Illinois Supreme Court suspending the right to a speedy trial.

¶ 26 A criminal defendant has the constitutional right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const., 1970, Art. I, § 8. "Although Illinois's speedy trial statutes implement the constitutional right, the statutory and constitutional rights are not coextensive." *People v. Hartfield*, 2022 IL 126729, ¶ 32. Under the Act, every person in custody in Illinois shall be tried within 120 days from the date he or she was taken into custody "unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2020). If not tried in accordance with the Act, the person shall be discharged from custody. 725 ILCS 5/103-5(d) (West 2020).

¶ 27 The speedy trial term begins automatically once the defendant is taken into custody (*People v. Phipps*, 238 Ill. 2d 54, 66 (2010)), and the Act is satisfied by beginning the process of jury

selection for the trial of the case (*People v. Williams*, 59 Ill. 2d 402, 405 (1974)). "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2020). "When the parties agree, on the record, to a continuance, the delay is attributable to the defendant." *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 77.

¶ 28    In determining whether a defendant has been denied his right to a speedy trial, we must examine the record in its totality and consider four factors: "the length of the delay; the reasons for the delay; the prejudice, if any, to the defendant; and defendant's assertion of his right." *People v. Crane*, 195 Ill. 2d 42, 48 (2001) (citing *Barker*, 407 U.S. at 530). We review *de novo* the ultimate determination of whether a defendant's right to a speedy trial was violated. *People v. Echols*, 2018 IL App (1st) 153156, ¶ 11.

¶ 29    Here, if the orders from the Illinois Supreme Court and the circuit court of Cook County were valid, then the speedy trial term in this case only ran from the date of Hill's arrest on April 8, 2015, to his arraignment 42 days later on May 20, 2015. *Phipps*, 238 Ill. 2d at 66 (speedy trial time period begins automatically with the defendant's arrest). After that date, Hill agreed to every continuance until the supreme court first suspended speedy trial terms under the Act on March 20, 2020.[1] See *Littleton*, 2014 IL App (1st) 121950, ¶ 77 (delay is attributed to the defendant where

---

[1] The supreme court's March 20, 2020, order stated that "the Chief Judges of each circuit may continue trials for the next 60 days and until further order of this Court. In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2018))." Ill. S. Ct. M.R. 30370 (eff. Mar. 20, 2020). The supreme court's order entered April 3, 2020, contained similar language. Ill. S. Ct. M.R. 30370 (eff. Apr. 3, 2020). The order entered April 7, 2020, provided that "[s]tatutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963 *** shall be tolled until further order of this Court." Ill. S. Ct. M.R. 30370 (eff. Apr. 7, 2020).

he agrees to a continuance). By the date Hill demanded trial on October 5, 2020, the Illinois Supreme Court had already authorized the suspension of statutory time requirements under the Act. Ill. S. Ct. M.R. 30370 (eff. Apr. 3, 2020; Apr. 7, 2020). Hill received his trial on September 30, 2021, just before the October 1, 2021, date the supreme court ordered that speedy trial provisions were to recommence. See Ill. S. Ct., M.R. 30370 (eff. June 30, 2021). Therefore, no speedy trial violation occurred unless the supreme court's suspension of the Act was invalid as Hill contends.

¶ 30    We can readily dispose of Hill's speedy-trial argument based on recent precedent from the Illinois Supreme Court resolving this precise issue. On March 23, 2023, our supreme court issued its opinion in *People v. Mayfield*, 2023 IL 128092, holding that its emergency orders tolling the Act's time restrictions did not (1) exceed its administrative and supervisory authority to regulate court procedures or (2) violate the separation of powers. *Id.* ¶¶ 3, 27-28. The court further held that the circuit court was not bound by the speedy-trial statute because the supreme court had expressly permitted tolling under its " '[g]eneral administrative and supervisory authority over all courts.' " *Id.* ¶ 36 (quoting Ill. Const. 1970, art. VI, § 16). Thus, no speedy-trial violation occurred here as the pretrial delays by the circuit court resulted from the supreme court's tolling of the Act's time restrictions. See *People v. Johnson*, 2023 IL App (2d) 210110, ¶¶ 24-27; *People v. Ontario House*, 2023 IL App (1st) 220496-U, ¶ 47; *People v. Roundtree*, 2023 IL App (3d) 220254-U, ¶ 13.[2]

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court.

---

The supreme court has since explained that the April 7 order "amended the March 20 and April 3 orders to clarify [the supreme court's] intent to toll the time restrictions of the speedy-trial statute." *People v. Mayfield*, 2023 IL 128092, ¶ 9.

[2] Rule 23(e)(1) states that "a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes." Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).

¶ 32    Affirmed.